# Commonwealth v. House, Appellant.

*Criminal law—Assault and battery—Evidence as to another crime.*

1. A presumption of guilt cannot be raised by proof of a distinct crime unconnected with that laid in the indictment.

2. On the trial of an indictment for assault and battery where the charge is that the defendant stabbed a woman on a public street, evidence is inadmissible to show that the defendant on the same evening, but in another street, although in the same neighborhood had attempted to assault another woman.

3. On the trial of an indictment for assault and battery where the prosecutrix and a witness positively identified the defendant as the assailant, it is reversible error for the court not to refer to the fact that both witnesses had declared shortly after the assault that the defendant was not the assailant.

*Criminal law—Evidence—Identity—Reasonable doubt—Good reputation—Charge.*

4. No class of testimony is more uncertain and less to be relied upon than that as to identity, and where great doubt is cast upon it by the witnesses themselves there is a double reason for submitting it with great caution.

5. On the trial of an indictment for a crime it is reversible error for the court to charge as follows: "If there is such a doubt that prevents you arriving at a satisfactory conclusion of guilt, then the defendant is entitled to the benefit of that doubt. On the other hand,—still speaking about this evidence with relation to reputation,—if upon the other hand you are satisfied in view of all the evidence in the case that the defendant is guilty, then the fact that he has previously had a good reputation is not a defense, that is the material that you make use of in ascertaining whether or not he is guilty, and if, looking at that and looking at all the other evidence in the case, you are convinced that this is the guilty man, then your duty is plain and simple." Such instructions do not give the accused the benefit of the right to have his proofs as to reputation considered as the proofs of a distinct fact in determining his guilt or innocence, or of the principle that good reputation may in itself be sufficient to create a doubt that would work an acquittal.

Argued Jan. 4, 1909. Appeal, No. 10, Oct. T., 1909, by defendant, from judgment of Superior Court April T., 1908, No. 17, affirming judgment of O. & T. Westmoreland Co., Feb. T., 1907, No. 12, on verdict of guilty in case of Commonwealth v. F. R. House. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Appeal from Superior Court. See 36 Pa. Superior Ct. 363.

At the trial in the common pleas when Emma Byers was on the stand the following offer was made:

Counsel for the commonwealth offers to prove by this witness that the defendant in this case attempted to assault her, or assaulted her on the porch of the house at the corner of East. Pittsburg street and Alwine avenue about the hour of six o'clock on the evening of November 15, 1906. This for the purpose of contradicting the defendant, who denies having met anyone at that point, or having assaulted anyone at that point, or having been at that point at all at any time during that evening.

Mr. Ogden: This is objected to, for the reason that it tends

to establish an entirely different crime, and is not material to the issue involved in this case.

The Court: This being offered in response to the defendant's testimony with respect to his whereabouts during the time of his stay in Greensburg, his attention having been called to the particular circumstance on which this witness is called to testify about, it is admissible for the purpose named. The objection is therefore overruled. Exception noted. [3]

"Q. Will you state to the court and jury where you were along about six o'clock of the evening of November 15, 1906? A. Well, I was through work about twenty-five minutes of six and whenever I was going home from work I was going up there by East Pittsburg street, and this young fellow was coming down and I was going on up putting on my gloves, and this here fellow he went upon a porch as if he was going to the door. Q. Whose porch, now? A. I don't know the people's name; the second house. Q. What house is it? A. The second house from Alwine avenue. Q. Is it the house at the corner of Alwine avenue and Pittsburg street? A. No, sir; the one up this way; high porch on it. Q. The one with a high porch on? A. Yes, sir; a high porch. He went up on the porch and as I got there he jumped down and grabbed me by the shoulders. Then I screamed and got loose from him, then he struck at me, then he run. Q. Is that man in court who assaulted you? Is he in court now? A. Yes, sir. Q. Who is it? A. There he sits (indicating). Q. Is this the man, the defendant here? A. Yes, sir."

The court charged in part as follows:

[If there is such a doubt that prevents your arriving at a satisfactory conclusion of guilt, then the defendant is entitled to the benefit of that doubt. On the other hand—still speaking about this evidence with relation to reputation—if upon the other hand you are satisfied in view of all the evidence in the case that the defendant is guilty, then the fact that he has previously had a good reputation is not a defense. That is the material that you make use of in ascertaining whether or not he is guilty, and if, looking at that and looking at all the

other evidence in the case, you are convinced that this is the guilty man, then your duty is plain and simple.] [6]

The jury returned a verdict of guilty, upon which judgment of sentence was passed.

On appeal to the Supreme Court the *errors assigned* among others were (3) ruling on evidence, quoting the bill of exceptions; (4) that the charge as a whole was inadequate on the question of identity, and (6) portions of charge, quoted above.

*Denna C. Ogden*, with him *John B. Keenan* and *Philip K. Shaner*, for appellant.

*Chas. C. Crowell*, assistant district attorney, with him *John F. Wentling, Jr.*, for appellee.

OPINION BY MR. JUSTICE FELL, March 1, 1909:

The prosecutrix was assaulted on St. Clair street in Greensburg, a few minutes after six o'clock on November 15, 1906, by a man who stepped in front of her on the sidewalk and cut her with a knife. It was dark; the nearest electric light was 150 or 200 feet distant, and she saw only the lower part of the face and the overcoat of her assailant, who after the assault left her and walked rapidly across the street. A few feet from the place of the assault she was met by James Reed, a mail carrier, who while on a cross street had heard her scream and reached the corner in time to see a man cross the street and stop on the opposite side. The appellant, who was the principal of the public schools of a town in an adjoining county, was a stranger in Greensburg; he had arrived there about noon and had spent the afternoon in visiting places of interest. He approached the scene of the assault from the direction in which the assailant had fled and, while standing with a number of people near the prosecutrix, he was charged by Reed with having committed the assault. He denied the charge, named the hotel at which he was staying, and offered to accompany anyone to it in order to establish his identity. After he had left the scene, he met a policeman on the street, related the

occurrence to him, accompanied him back to the house to which the prosecutrix had been taken and in the presence of a number of people asked her whether he was the man who had assaulted her. She replied that he was not the man. The next day he was taken under arrest to the hospital to which she had been removed, and she failed to identify him. Reed, the mail carrier, visited the station house soon after the arrest of the appellant and within an hour of the assault, and after a careful examination said he was not the man whom he had seen crossing the street. Subsequently on a second examination he said that he was the man, and he and the prosecutrix testified at the trial that he was the man who had committed the assault. They were the only witnesses who had seen the assailant. This statement of facts does not include all that was testified to in support of the commonwealth's case, but it includes all that is important in considering the assignments of error.

The appellant in his testimony had given a circumstantial account of his whereabouts during the whole of the afternoon. On cross-examination he was asked whether he had not been in Alwine avenue and had there tried to put his arms around a girl. He answered that he had not. In rebuttal the commonwealth made the following offer: "Counsel for the commonwealth offers to prove by this witness that the defendant in this case attempted to assault her or assaulted her on the porch of the house at the corner of East Pittsburg street and Alwine avenue about the hour of six o'clock on the evening of November 15, 1906. This for the purpose of contradicting the defendant, who denies having met anyone at that point, or having assaulted anyone at that point, or having been at that point at all at any time during that evening." The overruling of an objection to this offer is the subject of the third assignment of error.

It would have been competent for the commonwealth to prove that the appellant was in Alwine avenue, since this would have contradicted his testimony as to his whereabouts and would have shown that he was near the place of assault about the time it was committed. For the latter purpose it

may be said there was no necessity for proof, as the appellant had admitted this. We find no justification for the admission of proof that an assault had been made on the witness. There was no such logical connection between these assaults as parts of the same transaction nor as showing motive or establishing identity that proof of the former was proof of the latter. Manifestly the testimony was highly prejudicial to the appellant, and we must regard its admission as violative of the rule that a presumption of guilt cannot be raised by proof of a distinct crime unconnected with that laid in the indictment. In referring to the evidence of a distinct offense it was said in Shaffner v. Commonwealth, 72 Pa. 60, that unless the connection is clearly shown,—"the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt."

The fourth assignment presents the question of the adequacy of the charge on the subject of identity. This was the only question in the case. The two witnesses by whom the identity of the appellant was established were the prosecutrix and Reed. In referring to their testimony it was said in the charge: "The commonwealth produced two witnesses, who testified, you will remember the details of their testimony,—that this defendant was not only in this locality but that he came out of that St. Clair avenue or street or alley or whatever it is, about the time this young woman screamed and ran to Mr. Reed for protection. Mr. Reed says to-day that this man did that; the young lady says this is the man. While there may be some variance in their stories, in substance this is the nature of the charge." The prosecutrix, before whom the appellant had voluntarily gone a few minutes after the assault, positively asserted that he was not the man who had assaulted her; the next day when he was brought before her, she refused to say that he was the man. Reed, within an hour after the assault, after a careful examination had declared that the appellant was not the man. Neither witness saw the assailant under circumstances favorable to subsequent identification; and the qualifying fact that, when the matter was fresh in their minds,

they positively asserted the appellant's innocence, should have been brought to the attention of the jury. These facts weakened very materially their testimony at the trial, and they should have been referred to in connection with it. No class of testimony is more uncertain and less to be relied upon than that as to identity and, where great doubt is cast upon it by the witnesses themselves, there is a double reason for submitting it with great caution. It was said by the present chief justice in Bryant's Estate, 176 Pa. 309: "There are few more difficult subjects with which the administration of justice has to deal. The carelessness or superficiality of observers, the variety of powers of graphic description and the different force with which the peculiarity of form or color or expression strikes different persons, make recognition or identification one of the least reliable facts testified to by actual witnesses who have seen the parties in question."

In the charge there was a clear instruction that evidence of good reputation was not a mere makeweight but a distinct item of evidence to be considered in connection with the other evidence in the case. But in defining a reasonable doubt it was said: "On the other hand, still speaking about this evidence with relation to reputation, if upon the other hand you are satisfied in view of all the evidence in the case that the defendant is guilty, then the fact that he has previously had a good reputation is not a defense. That is the material you make use of in ascertaining whether or not he is guilty and if, looking at that and looking at all the other evidence in the case, you are convinced that he is the guilty man, then your duty is plain and simple." These were the last words to the jury on the subject and they may have deprived the appellant of a right to have his proofs as to reputation considered as the proofs of a distinct fact in determining his guilt or innocence. The first sentence was confusing and might lead the jury to infer that reputation was a ground of defense to be considered only in case of doubt, not a fact that might' in itself be sufficient to create a doubt that would work an acquittal. The instruction was more open to criticism than that for which a reversal was directed in Commonwealth v. Cate, 220 Pa. 138.

The third, fourth and sixth assignments of error are sustained. The judgments of the Superior Court and of the court of quarter sessions of Westmoreland county are reversed, and a venire facias de novo awarded.