## Commonwealth *v.* Buckman, Appellant.

*Criminal law—Rape—Evidence—Admissibility.*

On the trial of an indictment for rape it was reversible error to refuse an offer on the part of the defendant to prove the prosecution was instituted in pursuance to a conspiracy between the prosecutor and others for the purpose of extortion.

*Criminal law—Rape—Trials—Expert testimony.*

Where facts are of a character that render them susceptible of full and adequate development, so that their bearing upon the issues involved can reasonably be estimated by a jury, expert testimony in the nature thereof is not essential and therefore not admissible. Witnesses are not to be allowed to invade the province of the jury. It is only where the facts are complicated and not susceptible of description that would impart to the jury a satisfactory conception of them, that such opinion is permissible. Opinion evidence in rape cases, like that in other cases, must pertain to matters of scientific knowledge as distinguished from common opinion, or mere abstract speculations.

On the trial of an indictment for rape, medical evidence that it would be impossible to commit the crime in the manner described by the prosecutrix is inadmissible, where the circumstances are such that the jury is as competent to pass upon the question as a physician would be.

*Criminal law—Charge of court—Indictment—Counts—Rape—Assault and battery with intent to commit, etc.*

Where a defendant is charged with statutory rape, assault and battery with intent to commit rape, and assault and battery, it is error to instruct the jury that if they believe the story of the prosecutrix they must find the defendant guilty on the first two counts of the indictment. While it was perfectly proper and perhaps the duty of the court to express that opinion, it was not justified in refusing to submit the third and fourth counts to the jury.

Argued November 21, 1923.   Appeal, No. 158, Oct. T., 1923, by defendant, from judgment of O. and T. Bucks Co., Dec. T., 1921, No. 18, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Walter Buckman.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Indictment for rape, statutory rape, assault and battery with intent to commit rape, and assault and battery. Before RYAN, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on the first two counts of the indictment, on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and the charge of the court, as quoted in the opinion of the Superior Court.

*Harman Yerkes* and *Webster S. Achey,* and with them *Howard I. James,* for appellant.—It was competent to show a conspiracy between the prosecutor and others to institute the prosecution: Crossland v. Mutual Saving Fund, 121 Pa. 65.

Medical testimony was competent to prove under the facts that it was impossible for the defendant to have committed the offense charged: People v. Clark, 33 Michigan 112, 1 Am. Crim. Reports, 660 (cited in Wharton's Criminal Evidence, Vol. 1, Tenth Ed., page 829, note 8); Hardtke v. State, 67 Wis. 552 and 30 N. W. 733 (cited in Wharton and Stilles Vol. 3, 5th edition, section 543, note 17); Wharton and Stille's Medical Jurisprudence, volume 3, 5th Edition, Section 543; People v. Baldwin, 117 Cal. 244, 49 Pac. 186 (cited in Wharton and Stille's Jurisprudence, same edition, volume 3, section 543, note 18).

*Thomas Ross,* and with him *Hiram H. Keller,* for appellee.

OPINION BY GAWTHROP, J., December 13, 1923:

The appellant, a married man, about sixty-two years of age, by occupation a farmer, was convicted in the Oyer and Terminer of Bucks County of the crime of statutory rape committed on the person of a little girl, Lucille McKenna, of the age of twelve years. In order to discuss intelligently certain of the assignments of error a statement of the material facts is necessary. The child resided with her mother and stepfather, John B. Margerum, at Washington's Crossing, Bucks County, and the defendant lived within a half mile of the child's home. The Commonwealth's case consisted of the testimony of the child and her mother. The child testified that on an afternoon during harvest of 1920 she was in the defendant's hay mow, tramping hay which the defendant was pitching from a wagon into the hay mow; that the defendant came to the mow to help her; that he threw her down and, with force and against her will, had carnal intercourse with her; that she cried out but no one came to her rescue; that her clothing became stained with blood; that after the incident she accompanied the defendant to the field and helped him load

another load of hay; that the defendant's brother was
working in the field; that after the second load was
brought to the barn she went home; that her mother saw
the stains on her clothing; that she did not tell anyone
about the incident until more than a year afterward.
Her explanation of the reason for this was that her step-
father had stated that if anything happened to any of the
children he would send them to a reform school.  She
testified further that the first person she told of the de-
fendant's conduct in the hay mow was one David Ryan;
that her reason for telling Ryan was that there was talk
in the neighborhood about her misconduct with Ryan;
that prior to that time her stepfather had forbidden her
to talk with Ryan; that Ryan said he was going to tell
her stepfather about the defendant's conduct; that a
little later the defendant called her into his house and
read to her a letter written to him by Ryan, stating that
a little girl had come to him crying and told him of the
defendant's relations with her, that he intended to in-
form the child's parents and suggesting that if the de-
fendant desired to save himself he should meet Ryan
alone at nine o'clock the following evening.  She testified
further that after the defendant read her this letter, he
handed her a paper containing a form of a letter ad-
dressed to him and signed by her stating that the defend-
ant had been a great friend of her family, and that the
statements in Ryan's letter were untrue and made for
the purpose of causing a disturbance between the defend-
ant and her stepfather.  She testified that she copied the
letter, signed it, put it in an envelope addressed to the
defendant and handed it to him, and that the statements
therein were untrue and made because she was afraid of
the defendant.  The defendant and his brother testified
that the girl's accusation was false; that the hay was
taken from the wagon to the mow by a hay fork attached
to a rope and pulley operated by horses; that the girl
drove the horses, but was not in the mow; that the de-
fendant was on the wagon and the brother alone was in

the mow. The defendant produced the letter purporting to have been written and sent to him by David Ryan and also the letter written by the child to him.

At the trial the defendant offered to prove by a witness on the stand that he was acquainted with the prosecutor, John Margerum; that immediately prior to the institution of the prosecution against the defendant, the prosecutor called this witness to his house and informed him that he had a charge which he was going to prefer against the defendant, wherein he would accuse the defendant of having sexual intercourse with his daughter; that he, the prosecutor, was after the defendant and wanted to get him, or an expression to that effect; that he wanted the witness to aid him by lodging a like information, charging the defendant with having committed a like offense upon the witness's minor daughter; that the purpose of making the charge was to compel the defendant to make a conveyance of a house and lot in Taylorsville to David H. Ryan in trust for his step-daughter, Lucille McKenna; that in pursuance of this proposal the witness was induced to lodge such information before a justice of the peace; and that there was no merit in the complaint, because the daughter of the witness denied any improper conduct on the part of the defendant. The manifest purpose of the offer, as stated to the trial judge, was to prove that the prosecution was instituted in pursuance of a conspiracy between the prosecutor and others for purposes of extortion, and for the further purpose of discrediting the good faith of the prosecution. This offer was refused and is the subject of the seventh assignment of error. In disposing of the motion for a new trial, in which the exclusion of the offer which is the subject of this assignment was assigned as a reason, the learned trial judge stated that the offer was an attempt to introduce into the case evidence relating to another charge, of which the defendant was afterward relieved and that it was irrelevant because it had no relation to the charge on which the defendant was

being tried.   After a careful study of this record, we are of opinion that the exclusion of this offer was reversible error.   The case is a very serious one and calls for corresponding care in its consideration.   The crime charged, considering the youth of the child, is so repellent that we must be sure that conviction resulted from a trial free from prejudicial error.   It must be remembered that rape is an accusation easy to be made, hard to be proved, but harder to be defended by the party accused, though innocent: 1 Hal. P. C. 635.   While we do not express the view that the prosecution in this case was malicious or the result of a conspiracy to accuse, for we have no information upon that question, yet by very reason of the ease in the making of such an accusation and the difficulty of defending it, full opportunity should be accorded the accused to prove facts showing malice or bad faith on the part of the prosecutor.   This was the defendant's right.   The opportunity to show such facts is consistent with the caution which should be scrupulously observed in a trial in which the heinousness of the offense tends sometimes to inspire a jury with righteous indignation resulting in a hasty or illy considered verdict.   If the evidence had been admitted and measured up to the offer it might have satisfied the jury that the prosecution was instituted from an ulterior motive and not to avenge a wrong done to the child.   While such a motive is not necessarily inconsistent with the truth of the charge, it had such bearing upon the good faith of the prosecution that evidence thereof was relevant.   The seventh assignment of error is sustained.

The eighth assignment of error complains of the exclusion of the defendant's offer to prove by a physician that it would be impossible for a man, holding the girl in the way described by her, to have connection with her person.   The Commonwealth's objection to the offer was sustained on the ground that the question was not one upon which expert medical testimony was admissible because the jury was as well able to determine the question

as a physician would be.  The girl had testified that the defendant lay upon her and had connection with her while he held her hands above her head with one of his hands and held her feet together between his legs.  Where the facts are of a character that render them susceptible of full and adequate development so that their bearing upon the issues involved can reasonably be estimated by a jury, expert testimony in the nature thereof is not essential and therefore not admissible: Chambers v. Mesta Machine Co., 251 Pa. 618.  Witnesses are not to be allowed to invade the province of the jury.  It is only where the facts are complicated and not susceptible of description that would impart to the jury a satisfactory conception of them, that such opinion is permissible: Gandy v. Klaw, 269 Pa. 320.  Opinion evidence in rape cases, like that in other cases, must pertain to matters of scientific knowledge as distinguished from common opinion, or mere abstract speculations: Wharton & Stille's Medical Jurisprudence, Vol. 3 (5th ed.) par. 543.  For example, the question whether or not it would be possible for a well developed man to ravish a well developed woman is not a subject for expert opinion.  The jury are as competent to answer the question as a physician would be: People v. Benc, 130 Cal. 159; 62 Pac. 404; State v. Peterson, 110 Iowa 647; 82 N. W. 329.  A medical witness cannot give an opinion as an expert, based on his knowledge of the human system and the human frame whether a rape could have been committed in the mode and manner described; no peculiar knowledge of the human system is necessary to answer it: Cook v. State, 24 N. J. L. 843.  A physician would be competent to give his opinion as to the possibility of the act in question, where its possibility or impossibility depended upon or was affected by some physical injury, deformity or incapacity: State v. West Va. 641; 24 S. E. 634.  While some courts hold that a physician may testify that it would be physically impossible to commit the act of rape as testified to by the prosecutrix, the better opinion is to

the contrary, on the ground that to permit such evidence would allow the witness to assume the functions of the jury, and the matter is not properly the subject of expert testimony: 33 Cyc. p. 1475. The objection to the offer was properly sustained and the ninth assignment of error is overruled.

The eleventh assignment of error is to the following instruction of the court: "If you find, I repeat, beyond a reasonable doubt, that the defendant committed the offense which Lucille testifies he did commit upon her and under the circumstances detailed by her, then you will find him guilty on the first or second counts of the bill." The next sentence was: "But if you reject her story and believe the defendant's story, you will return a verdict of not guilty." The indictment contained four counts. The first charged rape at common law; the second rape under our statute; the third assault and battery with intent to commit rape; and the fourth assault and battery. The complaint in respect to the portion of the charge above quoted is that the learned trial judge limited the right of the jury to convict to the first and second counts. We think there is merit in this contention. The jury was not bound to accept or reject the girl's story in its entirety. It is manifest that they did not take her testimony at its face value, because that would have warranted a conviction of rape at common law, under the first count. In another portion of his charge the judge said: "If you accept the testimony of Lucille McKenna, she did not consent; she struggled, she cried out; she was overcome; she did not communicate the fact of her experience to anyone immediately afterward. But there is no evidence upon which you could base a finding that she did consent. If you accept her statement as true you must accept the whole statement. If you reject it you must find that the defendant did not commit any offense because hers is the only evidence in the case to the effect that he did." In the face of this instruction the jury found, however, that the intercourse

was with the girl's consent. And the judge sustained the verdict, although he had charged that there was no evidence on which to base a finding that there was consent. The fact that the girl told no one of the occurrence for more than a year, the fact that the first person she told was Ryan, whose conduct with her was the subject of neighborhood talk, and the fact that her story on the stand was inconsistent with the letter she gave to the defendant, might tend to cause the jury to accept her story upon the stand with hesitation and would be a justification for their believing that if the defendant committed any offense it did not amount even to statutory rape. The jury had the right to acquit on both the first and second counts and to convict of assault and battery with intent to commit rape, or merely of assault and battery. They should have been so instructed. They were told in the beginning of the charge that they were concerned with only the first and second counts, because there was no evidence, in the opinion of the court, that would sustain the offense of assault and battery, or assault and battery with intent to commit rape. While it was perfectly proper for, and perhaps the duty of the court to express that opinion, it was not justified in refusing to submit the third and fourth counts. We are constrained to hold that in this respect reversible error was committed. The eleventh assignment of error is sustained.

It is urged in support of the twelfth assignment of error that the court erred in charging as follows: "The material inquiry here is whether or not there is evidence here of bad repute on the part of the defendant for chastity at and before the time of the commission of this offense which you accept as true. He is presumed to have a good character until it is proved that he has not." While this instruction was technically erroneous because the material inquiry was guilt or innocence of the defendant, we are not satisfied from the entire record that the jury could have understood otherwise than that the

428, (1923).] Opinion of the Court—Concurring Opinion.

words "material inquiry" referred only to the question of defendant's reputation for chastity. The twelfth assignment is overruled. It is unnecessary to pass upon the other assignments.

The judgment is reversed and a venire facias de novo awarded.

CONCURRING OPINION BY TREXLER and KELLER, JJ.

We concur in the judgment for the reasons set forth in the above opinion but would in addition sustain the eighth assignment.