Commonwealth *v.* Walker et al., Appellants.

524

Argued March 25, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*David Kanner*, for appellants.

*Christopher F. Edley*, Assistant District Attorney, with him *William T. Gennetti*, Assistant District Attorney, *Victor Wright*, Assistant District Attorney, and *Samuel Dash*, Acting District Attorney, for appellee.

OPINION BY WRIGHT, J., July 21, 1955:

John J. Walker and Jesse B. Pierce were tried in the Court of Quarter Sessions of Philadelphia County on the following bills of indictment (August Sessions 1954): No. 289 charging Pierce with carrying a con-

cealed deadly weapon, No. 290 charging Walker with a similar offense, No. 291 charging Pierce and Walker with assault and battery and aggravated assault and battery, No. 292 charging them with conspiracy, and No. 293 charging them with robbery. The trial Judge did not submit bill No. 291 for consideration by the jury. Verdicts of guilty were returned on the other four bills. A motion for a new trial was overruled, and sentences were imposed on bill No. 293. These appeals followed.

The record discloses that, on May 28, 1954, about 10:15 a.m., two men came to the door of Jack Stamm's dwelling at 615 West Moyamensing Avenue. When Stamm opened the door, the smaller man, in Stamm's words, "put a gun in my stomach". Stamm recognized this man as Walker "from being in my tap room". Stamm was forced into the living room where the two men took $400.00 from his pocket. The taller man then forced Stamm into the bathroom, tied his hands and feet with strips torn from a pillow case, and placed adhesive tape over his mouth. In the meantime the smaller man was searching for additional money, and it was subsequently discovered that the sum of $320.00 had been taken from a closet in the rear room. Hearing the doorbell ring, the two men started to leave, whereupon Stamm broke loose. The taller man then struck Stamm on the head with a pistol. The roll of adhesive tape which had been used was subsequently found in the bathroom. An identification technician attached to the Bureau of Police discovered thereon a finger print which he compared with a print subsequently taken from Pierce. He testified that it was "the same fingerprint". When Stamm was shown a picture of Walker, he was not sure of his identity. After Pierce was apprehended, Stamm was at first not entirely certain that he was one of the

robbers[1]. He explained his uncertainty on the ground that at the time of the robbery, "Walker had on a baseball cap and Pierce wore an old felt hat". Stamm subsequently identified both men, and at the trial testified positively as to their identity. Pierce and Walker each denied on the witness stand that he had participated in the robbery, and each attempted to establish an alibi.

Appellants first contend that the charge of the trial Judge was misleading and prejudicial. It is our duty to consider the charge as a whole, and excerpts therefrom must be read in relation to their context: *Commonwealth v. Thacker*, 328 Pa. 402, 194 A. 924; *Commonwealth v. Almeida*, 362 Pa. 596, 68 A. 2d 595. In determining whether a charge contains reversible error, it will be viewed in its entirety: *Commonwealth v. Malone*, 354 Pa. 180, 47 A. 2d 445. If the charge as a whole is accurate and fair, objections to isolated excerpts therefrom do not form a proper basis for a reversal: *Commonwealth v. Jones*, 341 Pa. 541, 19 A. 2d 389. Nor will a conviction be reversed because of errors in the charge which do not deprive the accused of the fundamentals of a fair trial: *Commonwealth v. Barnak*, 357 Pa. 391, 54 A. 2d 865. And see *Commonwealth v. Vogle*, 174 Pa. Superior Ct. 541, 102 A. 2d 213.

Appellants argue that the trial Judge "took the entire question from the jury's consideration as to identity" when he said: "You cannot go beyond the evidence—why the police did not arrest them at one time, why they did not arrest them at another time—it is not for you. If it were for you, the question why they failed to do such and such would have been asked

---

[1] "I was about ninety-five percent sure. I wasn't one hundred percent".

by counsel". Viewing the charge as a whole, we find that the question of identity was fairly submitted. The trial Judge charged fully on the presumption of innocence and reasonable doubt. He emphasized that Stamm was the only witness at the scene of the crime. He eventually affirmed the following point: "No class of testimony is more uncertain and less to be relied upon than that of identity". This statement from *Commonwealth v. House,* 223 Pa. 487, 72 A. 804, has actually been disapproved as being too broad a generalization: *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A. 2d 820. The trial Judge also affirmed the following point: "There is no such thing as percentage of identification recognized by the law. A person is identified as being a participant or not". Finally, after the points had been disposed of, the following colloquy took place: "Mr. KANNER: I ask your Honor to charge the jury . . . that in considering the Commonwealth's testimony as to identification, to consider what happened with Stamm at the first time of identification. The Court: Members of the jury consider carefully all the testimony in this case, every iota, every scintilla of testimony, including the evidence of identification. Mr. KANNER: That is all".

Appellants further argue "that the entire context of the charge, when taken together, presented an argument for conviction and was not an impartial and fair presentation of the evidence". We have carefully examined the six excerpts relied upon to support this argument and fail to find reversible error. As said by President Judge RICE in *Blank v. Barnhart,* 17 Pa. Superior Ct. 214, and repeated in *Commonwealth v. Penrose,* 27 Pa. Superior Ct. 101, "The extent to which a trial judge ought to go in reviewing, analyzing and commenting on testimony depends very largely upon the circumstances of the case, and, to some extent,

upon the line of argument pursued by counsel in addressing the jury. Generally it must be left to his sound discretion". It is always the privilege and sometimes the duty of the trial Judge to express his opinion as to the weight and effect of the evidence, provided he clearly leaves to the jury the right to decide all facts and questions involved in the case: *Commonwealth v. Chambers,* 367 Pa. 159, 79 A. 2d 201. In the case at bar the trial Judge refrained from expressing any opinion as to appellants' guilt or innocence and made it abundantly clear to the jurors that it was their province alone to determine the facts[2]. It is asserted that the latter portion of the excerpt quoted in the footnote "was an argument, and not an unbiased charge". While possibly somewhat oratorical, the remarks of the trial Judge were brought about by a statement admittedly made by appellants' counsel to the jurors that "they had the power of kings". Jurors

---

[2] "I want to say to you that you are entirely free to act. There is no bird in the air freer than you are at this moment in the discharge of your duty to make a determination of fact, and if I make an observation which does not accord with your recollection, an observation of fact, or even an observation which may seem to you like a conclusion or an opinion, and you are not in accord with that, you reject that, and reject it hard, because it is your province. You do not have the power of kings, thank God. Would you want to have the power a Farouk has? You have the power of American citizens, called upon by an ancient, democratic process, a process for which men have fought to maintain over the years, the process of 12 citizens, peers of other citizens, sitting in judgment on the facts of a case. It is the democratic process. It is the power of people of freedom, and not the power of renegade kings. It is not a blue-blooded power, but it is the power which comes from the fine, red-flowing blood of American democracy based on a true concept of liberty, which was breathed into the Constitution of these United States of America. Exercise the power that you have, the power of safe, sane, sober judgment".

are not judges of the law in a criminal prosecution, and it is their duty to take the law from the Court: *Schofield Discipline Case*, 362 Pa. 201, 66 A. 2d 675. And see *Commonwealth v. New*, 142 Pa. Superior Ct. 358, 16 A. 2d 437. Speeches of counsel are subject to the supervision of the trial Judge, whose duty it is to confine the arguments within the bounds of legitimate advocacy: *Commonwealth v. Morrison*, 157 Pa. Superior Ct. 366, 43 A. 2d 400.

Appellants' second contention is that it was "error to permit questionable finger print expert testimony . . . where there is a hiatus as to the specimen getting to the expert and where there are only four points of similarity between the defendant's admitted print and the exhibit". Stamm testified that, upon his return from the hospital, he found in the bathroom the roll of adhesive tape which had been used upon him. The Assistant District Attorney then said: "That's the Commonwealth's Exhibit No. 1, which the police removed from that house", and immediately turned the witness over to defense counsel for cross-examination. Subsequently, this exhibit was shown to the identification technician, who testified as to the finger print thereon. At no time was there objection by the defense to the use of the exhibit, nor is it now asserted that the exhibit was spurious. While the progress of the exhibit from Stamm to the identification technician was not formally detailed, appellants' objection at this time is merely technical and does not warrant a reversal. See *Jessup v. Loucks*, 55 Pa. 350. A party may not sit silent and take his chance of a verdict and then, if it is adverse, complain of an oversight which could have been immediately rectified: *White v. Pittsburgh Railways Co.*, 132 Pa. Superior Ct. 373, 200 A. 932. In the absence of fundamental error, evidence admitted without objection is to be given its

natural probative effect: *Zellner v. Haddock Mining Co.,* 139 Pa. Superior Ct. 16, 10 A. 2d 918.

Appellants further argue that the testimony of the finger print expert should not have been admitted. James A. Kilty testified that he had served the Police Department of Philadelphia in the capacity of a finger print identification technician for a period of fourteen years, and had previously testified as an expert on four occasions. He compared the finger print taken from Commonwealth's Exhibit I with Pierce's admittedly genuine print. Kilty was then subjected to an extensive cross-examination during which it was established that there were four points of similarity between the two prints. Appellants assert that this number of points is less than the minimum required. In the words of Judge (now President Judge) RHODES in *Commonwealth v. Snyder,* 123 Pa. Superior Ct. 523, 187 A. 254: "It is largely within the discretion of the trial judge to determine whether a witness shall be permitted to testify as an expert, and whether the qualifications with respect to his knowledge have been sufficiently established. . . The experiential qualifications of a witness are to be determined, in the first instance, by the trial judge, and he will not be reversed on appeal unless there has been a clear abuse of that discretion". We are not convinced that there was any abuse of discretion in the case at bar. The weight to be given Kilty's testimony was a matter for the jury: *Cooper v. Metropolitan Life Insurance Co.,* 323 Pa. 295, 186 A. 125.

Appellants contend finally that it was "error for the Court to withdraw an indictment from the jury's consideration, charging a lesser offense, after the case has been tried on said bill". It is argued that there was sufficient evidence before the jury to justify a verdict of guilty on bill No. 291, notwithstanding

"the fact that the evidence went further and may have required a conviction on a more serious charge". Appellants' position is that "the Court's action took away a constitutional right of the defendants to be convicted of a crime for which they stood charged, of a lesser degree than the robbery bill". Sole reliance is placed on the cases of *Commonwealth v. Buckman*, 82 Pa. Superior Ct. 428, and *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 632. In the *Buckman* case the indictment contained four counts. The trial Judge limited the jury's consideration to the first two counts, respectively, common law rape and statutory rape. This Court held that it was reversible error not to submit the third and fourth counts, respectively, assault and battery with attempt to commit rape and simple assault and battery. The evidence in the *Buckman* case clearly warranted a finding of not guilty as to the first two counts and guilty as to the third and fourth counts. In the *Flax* case there were two bills of indictment, one charging murder and the other charging manslaughter. It was held that the trial Judge erred in withdrawing the latter bill from the consideration of the jury because there was evidence which would reduce the crime to voluntary manslaughter. The Supreme Court pointed out, however, that this rule does not apply in "cases where it is clear that there is no evidence and no permissible inference from the evidence pointing to the lesser offense". For instance, in *Commonwealth v. Yeager*, 329 Pa. 81, 196 A. 827, which involved a charge of murder in which there was no evidence of manslaughter, it was held proper for the trial Judge to refuse to submit the lesser offense. See also *Commonwealth v. LaRue*, 381 Pa. 113, 112 A. 2d 362. In 77 C. J. S., Robbery, section 49 c(2), the rule is thus stated: "When the evidence raises the issue, the court may instruct the jury as to any offense of a

532

lower grade necessarily included within a charge of robbery, and ordinarily, under the authorities on the question, should do so, regardless of how improbable the evidence might be. Such a charge is not required, however, where under the evidence accused is either guilty of robbery or innocent of any offense charged, or where there is no evidence which would support a conviction for the lesser offense, or where the prosecution did not ask that accused be convicted of a lesser offense, or where accused denies having taken anything". According to the theory upon which the case at bar was tried by both sides[3], the evidence justified only one conclusion, namely, that appellants were either guilty of robbery or they were not guilty of any offense whatever. As expressly stated in his charge, this was the reason for the action of the trial Judge.

Judgments affirmed.

---

[3] It may have been the original intention of the Commonwealth in preparing bill No. 291 to consider the blow on the head as a separate offense. Failure to proceed on that theory did not prejudice appellants. At the conclusion of the charge appellants requested a directed verdict of not guilty as to bill No. 291. It appears that the bill was subsequently disposed of in that manner.