# Commonwealth v. King

*Joseph Canuso, Assistant District Attorney,* for Commonwealth.

*Raymond J. Takiff,* for defendant.

RIBNER, *J.*, April 7, 1975—Defendant, Lamar King, was tried jointly with a codefendant before a jury, selection of which began on December 17, 1973.

On December 27, 1973, the jury found defendant, Lamar King, guilty of larceny.

The facts established by the Commonwealth at trial indicated that on April 17, 1973, at approximately 8 p.m., Mrs. Gilda Intrieri and Mrs. Catherine Lafferty left Jacob Ruth's undertaking establishment on Germantown Avenue and began to walk home, proceeding on the east side of Germantown Avenue in a southerly direction.

As the two women approached the 8100 block of Germantown Avenue, they observed two men who had come from Hartwell Lane. The two men were walking north on Germantown Avenue and passed Mrs. Lafferty and Mrs. Intrieri. Both women had resided in this Chestnut Hill area their entire lives and knew that these two men were strangers to the area. They felt a bit relieved when the two men passed them without incident.

A short time after the men passed, Mrs. Lafferty and Mrs. Intrieri heard running footsteps behind them and then felt someone tugging at their purses. Mrs. Intrieri resisted momentarily and caused her assailant to turn and face her. She recognized him as being one of the men who had just moments ago passed her. The man who took Mrs. Intrieri's pocketbook was Lamar King's codefendant. Defendant, Lamar King, cleanly and quickly snatched Mrs. Lafferty's purse, without turning and facing her. As both men fled with the purses, Mrs. Lafferty recognized them as being the same two men who had approached and passed them only moments ago.

After the two men snatched their purses, they fled to their automobile which was located on Hartwell Lane. At that point, in approximately the 8100 block of Germantown Avenue, the two women had been nearing the corner of Hartwell Lane and Germantown Avenue.

On that corner, at that time, there was a vacant lot. When the two men escaped, they ran over that lot toward their car. The women were able to watch them flee and get into a vehicle, which they both identified as a small dark car.

While the two defendants were escaping, Mrs. Sandy Brock was driving north on Germantown Avenue en route to Jacob Ruth's funeral establishment. She spotted Mrs. Intrieri and Mrs. Lafferty and noticed by their gestures that something was wrong. She stopped her car, was informed of the purse snatching incident, she backed up her car in a southerly direction and subsequently pulled into Hartwell Lane. She observed the two men running across the lot and getting into their car. She followed the car and noted the license plate number.

The police were called and given the information as to the appearance of the car and the license number. On the basis of this information, Officer Richard John Luckangelo, of the Philadelphia police force and his partner stopped Lamar King and his accomplice near the corner of Stenton and Durham, at approximately 8:15 p.m. This location is approximately 10 blocks from the scene of the larceny.

Defendant, Lamar King, filed motions for a new trial and in arrest of judgment, but both were denied by this court on July 2, 1974.

Counsel for defendant King raised four main assignments of error.

Initially, defendant King raised the question of whether there had been a proper identification necessary to support the Commonwealth's case. Defendant first argued that there had been a contradiction in the testimony of Mrs. Intrieri and the arresting officer, Officer Luckangelo. Mrs. Intrieri stated that at the time of the larceny, defendant King was wearing black clothing and had a high Afro haircut. Officer Luckangelo's testimony did not support this description. Given this contradiction, defendant asserts that the only testimony which the jury could have relied on was that of Sandy Brock and Mr. Tierney. But here again, defendant points out, conflict exists in the testimony. Sandy Brock testified that she saw the car defendant King and his accomplice entered and that she observed defendant and the other man for about a minute before they entered the car. Mr. Tierney was employed near the incident. He had answered Mrs. Intrieri's and Mrs. Lafferty's screams. After finding out what had occurred, he pursued the fleeing culprits. Mr. Tierney testified that he saw

the two men get into the car and that, at that point, Sandy Brock was traveling down Germantown Avenue and made a turn. He testified that he shouted to her to follow the car. Defendant points out that there is a conflict: Tierney states that after the men got in the car he asked Sandy Brock to follow them but Mrs. Brock testified she waited a minute behind the car before she followed in order to secure the license number. Defendant argues that Sandy Brock probably followed the wrong car.

Defendant's arguments directed toward alleged errors in identification are without merit.

As to the alleged conflicting testimony, it is always within the province of the jury to determine the weight and effect of evidence. Also, it is the jury's duty to weigh conflicting testimony: Commonwealth v. Kibler, 215 Pa. Superior Ct. 367, 258 A. 2d 681 (1969). In rebuttal, the Commonwealth aptly points out that they do not believe there was a true conflict. It was possible that Sandy Brock observed these fleeing men for a minute, and then drove toward Mr. Tierney who screamed his instructions.

An even more fatal flaw in defendant's argument is the positive in-court identification of defendant King by Mrs. Intrieri. Defendant asserts that this was made possible by all the previous court hearings. Perhaps these previous hearings did strengthen her ability to identify defendant, but the law states an identification, even though weak, if there is other evidence in the case presented, may be sufficient to convince a jury of defendant's guilt beyond a reasonable doubt: Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820 (1954). Here, the court believes the in-court identification was positive, and if it was slightly weakened, surely the

Commonwealth presented additional evidence of identification (Mrs. Lafferty's testimony is one example) to support the conviction.

Defendant's second argument is directed toward the conviction of larceny, that it is an inconsistent verdict. The jury believed defendant not guilty of the aggravated robbery but found him guilty of larceny, a lesser included offense found within the aggravated robbery offense: Commonwealth v. Mitchell, 222 Pa. Superior Ct. 335, 295 A. 2d 90 (1972). Robbery is larceny from person by means of violence: Commonwealth v. English, 446 Pa. 161, 279 A. 2d 4 (1971).

The charge of the lesser included offense should be given by the court regardless of how improbable the evidence may be to support it: Commonwealth v. Walker, 178 Pa. Superior Ct. 522, 116 A. 2d 230 (1955). It should also be pointed out that the court charged the jury on the crime of larceny with the agreement of both the Commonwealth and defendant's counsel.

Defendant next alleges that the verdict was a compromise verdict, and bases this belief on two separate incidents. First, he argues that the court erred in failing to instruct the jury not to discuss the case among themselves. Defendant had made this request during the course of the trial. The court properly denied this request because that instruction was given at the commencement of the trial and because defendant had no evidence of any conversations concerning the trial among jurors. Rather, defendant said he had a mere suspicion that it was occurring. Secondly, defendant directs the court's attention to a phone conversation by one of the jurors immediately after the trial and before the jury began its deliberations. The call took place

in the court's chambers; both counsel were present. Defendant's counsel had put into the record the statement that he heard the jury member say, "I cannot answer that question. The Judge is in the room. The defense attorney is looking right at me." And then he said, "I'd better be." Defendant is certain that this indicated that the jury member wanted to be somewhere at a certain time, and that he had better be finished his jury duty. Thus, defendant believes the member of the jury rushed to get a verdict. The court was in the room at the time of the call. It was the impression of the court that the caller was not the least perturbed. In fact, it seemed to the court he was taking the inconvenience in good grace. Also the court refused to speculate as to what the subject matter of the questions were to which the jury member was responding. Defendant believes it was error not to grant a mistrial at that juncture. It is true that the jury must make their determination free from external causes which tend to disturb their judgment. Deliberations should be conducted calmly, dispassionately and honestly: 23A C.J.S. Crim. Law §1368. But here, after the individual made his phone call, the court, after consideration of the call and the jury member's calm demeanor, was satisfied that no injustice would result if the trial continued.

Finally, defendant's final contention of error concerns the Commonwealth's tender to the defense, in open court, of certain witnesses whom the Commonwealth did not intend to call. The Commonwealth enumerated certain witnesses that they would make available. Defendant argued that this permitted the jury to infer that there were other witnesses who would have testified against

defendant. Thus, defendant asserts he was deprived of his constitutional rights to confrontation.

In Commonwealth v. Horn, 395 Pa. 585, 150 A. 2d 872 (1959) the court correctly stated:

"There is no duty on the Commonwealth to call witnesses whose names appear on a bill of indictment or even eye witnesses, if it believes after examination or investigation that their testimony is unreliable, or unworthy of belief, or surplusage or irrelevant. The law in such a case merely requires a District Attorney to notify the Court and defense counsel that he does not intend to call certain persons whose names appear on the bill of indictment as Commonwealth witnesses."

See also Commonwealth v. Jones, 455 Pa. 488, 317 A. 2d 233 (1974). The Commonwealth was merely complying with the law. In addition, it should be noted that the defense counsel did not object at the time the Commonwealth was tendering the names of witnesses.

To be certain that defendant was not prejudiced by this tender, the court allowed defense counsel's speech subsequent to the tender, wherein counsel stated that he would not vouch for the credibility of those enumerated witnesses tendered by the Commonwealth. It certainly would have been the better practice for the Commonwealth to have made the tender out of the hearing of the jury. However, the defense counsel did not object at the time and did not move for a mistrial or ask the court for cautionary instructions. Instead, defense counsel launched into a speech which cleared up any problems for the defense over the determined objections of the Commonwealth.

The court has reviewed all the allegations of error raised by counsel for defendant, Lamar King, and

finds each and every one of them to be without merit.

For the reasons set forth above, defendant's motion for new trial and/or arrest of judgment were denied.