457 A.2d 918

COMMONWEALTH of Pennsylvania

v.

Oscar Leroy HEATON, Appellant.

COMMONWEALTH of Pennsylvania

v.

Stevenson Evans SAMPLE, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 6, 1981.

Filed Feb. 25, 1983.

Petition for Allowance of Appeal Granted June 24, 1983.

Charles R. Rosamilia, Jr., Public Defender, Lock Haven, for appellants.

Richard Saxton, Sp. Prosecutor, Lock Haven, submitted a brief on behalf of Commonwealth, appellee.

Before SPAETH, BECK and LIPEZ, JJ.

BECK, Judge:

Appellants, Stevenson Evans Sample and Oscar Leroy Heaton, were tried together for three counts of burglary, two counts of criminal conspiracy and one count of criminal mischief. A jury found each defendant guilty on all counts. After the denial of post-trial motions, appellant-Sample was sentenced to three concurrent terms of from five to fifteen years incarceration; appellant-Heaton was sentenced to three concurrent terms of from seven to fifteen years. Appellants, although represented by separate attorneys at trial, were both represented on appeal by appellant-Heaton's trial counsel, and they allege identical claims on appeal.

Appellants argue initially that an inference of prior criminal behavior was improperly raised at trial and that the trial court erred in refusing to grant their motions for a mistrial. Finding that claim to be meritorious, we reverse judgments of sentence and remand for a new trial.[1]

---

1. Appellants present five other allegations of error. We find the opinion of the lower court supporting the denial of post-trial motions

■ According to appellants, the first time an inference of prior criminal activity was raised occurred when appellant-Heaton's trial counsel was cross-examining Chief Conklin of the Castanea Police Department about the absence of physical evidence linking appellants to the first of the three burglaries:

Q. Did you find anything at all on the premises which would tie in either the Defendant Sample or the Defendant Heaton with this crime?

A. No.

Q. You did not?

A. You mean by physical evidence?

Q. Any kind of physical evidence; any fingerprints; anything?

A. If I may state, I called in a State Trooper Hunter from Montoursville. He is a Crime Lab man. He brought up a portable crime lab. He took prints. The prints turned out that there was gloves used. We didn't come up with any prints.

Q. You mean there was some prints on the premises with gloves?

A. Yes, gloves.

Q. Do you have any knowledge if the person using those gloves was the person that burglarized that building or not? It could have been a patron in there with a pair of gloves on, in other words, somebody in the fire hall?

A. It's kind of hard to say, one way or the other.

Q. You do not know?

A. I don't know.

Q. Do you have any personal knowledge yourself at this point that anything you found in your investigation of these premises that would tie these two defendants in with this crime?

A. (No response.)

Q. There were no prints, I take it, right?

to have adequately answered those claims, and we need not address them here.

A. Right.

Q. *Was there any other evidence? Were there clothes found? Were there things like that?*

A. *No, except for the defecation which is a sign of a person, almost like a painter when he signed it. A person gets excited, he can't help himself and has to go relieve himself.*

Q. *You are saying that is a sign of something?*

A. *That's a sign of something that's been found at a couple other of the burglaries that —*

MR. ROSAMILIA: Your Honor, I would object to this testimony.[2] I would ask that we approach the Bench at this point.

THE COURT: No, you have asked the question, and you have to go with whatever—I do not see what effect it would have. I will instruct the witness not to discuss any other offense.

THE WITNESS: Okay. Sorry, your Honor.

THE COURT: You opened the door with your question.

BY MR. ROSAMILIA:

Q. Did you find any hard evidence, any hard and fast evidence, anything to tie these two gentlemen in?

A. Just what I stated.

Notes of Testimony ("N.T.") at 28–30 (emphasis added). Appellants also point to later redirect examination of another police officer by the prosecutor in this case which they argue further raised the implication of prior criminal activity by appellants. The prosecutor asked Police Officer Walakavage of the Lock Haven Police Department why he told

**2.** The dissenting opinion places considerable emphasis upon the timing of defense counsel's objections both to this testimony and to the subsequent testimony which we herein find to have raised an inference of prior criminal activity. We disagree with the dissent's conclusion that these objections were not made in timely fashion, and instead conclude that in both instances counsel objected as soon as the grounds for those objections became clear. Prior to the objected to statements, it was not self-evident that the witnesses would allude to this prior criminal activity. McCormick, *Evidence* (1972, 2d.Ed.) § 52.

Detective Eichenlaub of his Department that he had observed appellants in a bar on the morning of September 14, 1979—the morning the burglaries allegedly occurred:

BY MR. SAXTON:

Q. Officer, Mr. Roberts asked you why you told Detective Eichenlaub the next day that you had seen them in there the day before. Why did you tell him?

A. *Because Detective Eichenlaub told me of the burglary at the Castanea Fire House and the defecation they found on the floor, and I stated that I seen Oscar Heaton and Steven Sample —*

MR. ROSAMILIA: Objection, your Honor.

MR. ROBERTS: Objection. I do not see what relevance that has.

THE COURT: I do not know why you are asking the question. We are going to sustain the objection and instruct the jury to disregard the answer.

MR. SAXTON: He asked him why he told him.

THE COURT: I know, but I do not think you can pursue it and the Court be allowed to admit it into evidence.

MR. SAXTON: That is all.

N.T. at 72–73 (emphasis added).

Defense motion for a mistrial was denied.

Appellants acknowledge that no further inquiry along these lines was permitted, but argue that the inference of prior criminal behavior had been raised. Appellants cite *Commonwealth v. Washington*, 488 Pa. 133, 138, 411 A.2d 490, 492 (1979), *reargument denied*, March 3, 1980, for the proposition that "in determining if the introduction of the challenged testimony constitutes reversible error, the controlling question is whether the jury could reasonably infer therefrom that the accused had engaged in other unrelated criminal activity. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (197[2] )."

█ We are convinced that the jury reasonably could have construed the allusions to the feces left at the scene of

the crime as linking appellants to another crime or crimes. We are confident that the jury grasped the implication of the above quoted testimony that in prior incidents either one or both of the appellants had left similar evidence at a crime scene or scenes. This we condemn for it raises a serious doubt in our minds as to an improper basis for the jury's verdicts.[3] This Court stated in *Commonwealth v. Boulden*, 179 Pa.Super. 328, 332, 116 A.2d 867, 869 (1955) the general rule for the admissibility of evidence of prior criminal conduct:

> The general rule is that "on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible." 22 C.J.S. Criminal Law § 682. *Shaffner v. Commonwealth*, 72 Pa. 60 (1872); *Snyder v. Commonwealth*, 85 Pa. 519 (1877); *Swan v. Commonwealth*, 104 Pa. 218 (1883); *Commonwealth v. Saulsbury*, 152 Pa. 554, 25 A. 610 (1893); *Commonwealth v. House*, 223 Pa. 487, 492, 72 A. 804 (1909); *Commonwealth v. Shanor*, 29 Pa.Superior Ct. 358, 362 (1905).

> In *Shaffner v. Commonwealth*, supra, page 65 it was said:

> "If the evidence (of an offense not charged) be so dubious that the judge does not clearly perceive the connection (with the crime charged), the benefit of the doubt should be given to the prisoner, instead of suffering the minds of the jurors to be prejudiced by an

---

**3.** Appellants contend that the two witnesses who referred to prior criminal activity should have known better since they were both police officers and Commonwealth witnesses. They analogize the instant matter to *Commonwealth v. Washington*, 488 Pa. 133, 411 A.2d 490 (1979) where the Pennsylvania Supreme Court stated that when the witness is an investigator of the District Attorney's office, "it is a reasonable assumption that he should have known not to make such statements [suggesting prior criminal activity]." *Id.*, 488 Pa. at 138, 411 A.2d at 492. We find the preceding reasoning to be persuasive.

independent fact, carrying with it no proper evidence of the particular guilt." [4]

■ The Commonwealth counters that in evaluating appellant's argument emphasis should be given to the fact that comments of which they complain were elicited by appellants' counsel.[5]

4. It is well-settled, of course, that "evidence of ... prior criminal conduct [is] admissible to establish ... identity by showing the similarity between the two incidents. *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975)." *Commonwealth v. Shively*, 492 Pa. 411, 414, 424 A.2d 1257, 1258 (1981). The *Shively* court quoted the McCormick treatise to illustrate this exception to the above general rule:

> As McCormick has stated, evidence of prior crimes is admissible: "... to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here, *much more is demanded than the mere repeated commission of crimes of the same class*, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature.*" McCormick, Evidence, § 190 (1972 2d ed.) (Emphasis added) (Footnotes omitted).

*Id.*, 492 Pa. at 415, 424 A.2d at 1259. We note that the Commonwealth did not contend at trial that the above testimony was admissible because it fell within this narrow exception, and there is no evidence of record which would support such an identical modus operandi between the burglaries for which appellants were charged and prior burglaries which would establish the identity of appellants as the burglars in the instant matter. Indeed, the Commonwealth introduced no evidence that appellants had committed the other burglaries.

5. We note that while the first reference to prior criminal behavior was offered in response to a question from defense counsel, the second was offered in response to the prosecutor's question, albeit a follow-up to a defense question on cross-examination. It appears clear that the prosecutor's question was aimed directly at eliciting the prejudicial response.

The trial judge refused to sustain a defense objection to the first reference because it was offered in response to a question from defense counsel. A defense objection was sustained, however, after the second reference to prior criminal activity. We note also that a curative instruction was provided.

While the Pennsylvania Supreme Court in *Commonwealth v. Richardson*, 496 Pa. 521, 437 A.2d 1162 (1981) held that a curative instruction may eliminate the taint arising from a reference to prior criminal conduct, the *Richardson* court gave great weight to the fact that the Commonwealth sought to prevent the remarks raising the inference of prejudice. In the instant matter there were no such efforts of record made by the Commonwealth to preclude the offering of these remarks by its witnesses. To the contrary, it appears clear that the Commonwealth purposefully elicited the second reference to prior criminal activity. Moreover, we find that the curative effect of the instruction

■ In concluding that the identity of the questioner is not relevant in evaluating the prejudicial impact of a reference to prior criminal activity, Judge Spaeth has stated and we agree:

> An innocent question may elicit a response so prejudicial as to deny an accused the right to a fair trial, and this is so whether the innocent question is asked by the prosecutor, *Commonwealth v. Washington*, 488 Pa. 133, 411 A.2d 490 (1979) (inference of criminal activity drawn despite fact that purpose of prosecutor's question was to show defendant had fled after murder), or by the accused's own counsel, *Commonwealth v. Wetzel*, 276 Pa. Superior Ct. 445, 419 A.2d 541 (1980) (inference of criminal activity drawn despite the fact that questions asked by defense counsel and not prosecutor).

*Commonwealth v. Bowermaster*, 297 Pa.Super. 444, 456, 444 A.2d 115, 121 (1982) (SPAETH, J. concurring and dissenting).

■ The Commonwealth further argues, citing *Commonwealth v. Weakland*, 273 Pa.Super. 361, 417 A.2d 690 (1979), that any error in this regard was harmless. The *Weakland* court enunciated the test for finding error in this context to be harmless:

> Where ... this Court is convinced beyond a reasonable doubt that the error did not contribute to the verdict, we may hold that reversal is not required because the error was harmless. *Commonwealth v. Story*, 476 Pa. 391, 38[3] A.2d 155 (1978). In the instant case, although Trooper Fedin's testimony supported an inference that appellant had previously engaged in criminal activity, that inference was innocuous in view of the great volume of other evidence presented at trial and was, therefore, harmless error.

*Id.*, 273 Pa.Superior at 369, 417 A.2d at 694. We are not convinced that the error did not contribute to the verdict. In the instant matter, no physical evidence was introduced

in this matter was far outweighed by the prejudicial impact of the above remarks.

linking appellants to the burglaries; the only evidence that inculpated appellants was the testimony of Kathryn Lamey who testified that she had been an accomplice in the burglaries and who had been accepted into the Accelerated Rehabilitative Disposition Program contingent upon, inter alia, her offering testimony in the prosecution of appellants. The statements raising the inference of prior criminal behavior could have weighed heavily upon the minds of the jurors and contributed to their verdict.

Judgments of sentence reversed and new trial granted.

LIPEZ, J., filed a dissenting opinion.

LIPEZ, Judge, dissenting:

It is ironic indeed that the defendants are granted new trials by reason of their own self-inflicted wounds in opening up the very area which the majority considers prejudicial. I dissent.

It is important to bear in mind that both defendants were charged with three burglaries, all of which were consolidated for trial without objection. According to the testimony of their accomplice, Kathryn Lamey, all three offenses occurred on September 14, 1979 within the time frame of about seven hours—the Castanea Fire Hall, around 2:00 a.m., the Winner Packing Plant at 3:00 a.m., and the Womeldorf cabin around 9:00 a.m. The defendants and Kathryn Lamey were seen together in a tap room around 1:30 a.m. that same morning by Officer Walakavage. Kathryn Lamey, who drove the car to all three burglaries, implicated both defendants.

Officer Conklin, a Commonwealth witness, had testified as to his physical findings at the Castanea Fire Hall. It was during the cross-examination by defendant Heaton's trial counsel, and upon his persistent questioning in an obvious effort to obtain from the witness some exculpatory statements, that the witness spoke about the defecation as fully set forth in the majority opinion. No objection was

made by either defense counsel. Counsel then invited an explanation as follows:

Q. Are you saying that is a sign of something?

A. That's a sign of something that's been found at a couple of other of the burglaries that . . .

Then before the answer was completed there was. an objection by defense counsel and there was no further explanation by the witness. Undeterred, counsel continued his cross-examination as follows:

Q. Did you find any hard evidence, any hard and fast evidence, anything to tie these two gentlemen in?

A. Just what I stated.

Q. So you do not know of anything *else* to tie these gentlemen into the scene of the crime?

A. No.

The record clearly shows therefore that the answer by the witness as to the defecation was in response to defense counsel's question; that there was no objection to the answer; that the witness's explanation as to the defecation was also in response to counsel's invitation; and that there was no request for a mistrial.

It is a fundamental proposition that the failure to assert promptly and specifically an objection is a waiver. McCormick, *Evidence* (Cleary, 2d Ed.) § 52. This evidence was therefore in the record and became a part of the case against the defendant, as any other evidence. *Carl v. Kurtz*, 255 Pa.Super.Ct. 198, 386 A.2d 577 (1978); McCormick, *supra*, § 54. The explanation having been given at defendant's request, he must be held to the consequences of his choice. *See Commonwealth v. Stakley*, 243 Pa.Super.Ct. 426, 365 A.2d 1298 (1976). McCormick, *Evidence, supra*, § 57.

As to the other line of testimony referred to by the majority, Officer Walakavage had testified on direct examination, as noted above, regarding the presence of the defendants and Kathryn Lamey at a bar early in the morning prior to these burglaries. Defendant Sample's counsel, in

his cross-examination, developed the fact that this witness on the following day commented to Detective Eichenlaub that the defendants, Oscar Heaton and Steven Sample, and Kathryn Lamey were in the bar. Defense counsel continued his cross-examination as follows (N.T. 66):

Q. Why did you tell Detective Eichenlaub the following morning?

A. The following afternoon.

Q. Yes.

A. Because of the burglaries we had.

Thereafter, on redirect examination, the prosecutor asked the same question as to why he told Detective Eichenlaub the next day. No objection was made to the question. The witness, as noted in the majority opinion, then replied: "Because Detective Eichenlaub told me of the burglary at the Castanea Fire House and the defecation they found on the floor, and I stated that I had seen Oscar Heaton and Steven Sample ...." Further answer was cut off by the objection of defense counsel, and the sustaining of the objection by the court. Defense counsel then moved for a mistrial which was refused.

Defense counsel should have moved promptly to object to the question as soon as it was asked and before the answer was given, especially because he had been forewarned about the possible nature of the answer from his own, as well as his co-counsel's, cross-examination. Having failed to do so, it constituted a waiver. *Evans v. Otis Elevator Co.*, 403 Pa. 13, 26–27, 168 A.2d 573, 579–80 (1961); *Kohn v. Shegda*, 5 D & C 3d 526 (1978); McCormick, *Evidence, supra*, § 52.

Nevertheless, I see nothing in this answer to raise any new implication of other or prior criminal activity. He simply reiterates what is already in the record, viz. the defecation found in the Castanea Fire Hall and the presence of the two defendants, Heaton and Sample, with Kathryn Lamey some hours before the first burglary. Nothing in the redirect examination is said about any other burglaries. Any implication of the presence of feces at the other

burglaries (and these "other burglaries" were never clarified and could reasonably apply only to those involved in the three charges for which the defendants were on trial) arose because of the cross-examination by both defense counsels thereby opening the door to further probing by the Commonwealth. *Commonwealth v. Stakley, supra. See Commonwealth v. Wright, et al.*, 228 Pa.Super.Ct. 251, 323 A.2d 389 (1974) (defendants charged with robberies; there was no error in refusal to grant mistrial because of admission of restitution offer by defendants, particularly where previous evidence as to admissions made by defendants during the restitution offer had been admitted without objection).

In any event, there is no *per se* rule requiring a new trial for every reference to prior criminal conduct. *Commonwealth v. Bowermaster*, 297 Pa.Super.Ct. 444, 444 A.2d 115 (1982) (majority opinion). The decision as to the grant of a mistrial rests in the sound discretion of the trial judge, and will not be reversed absent a flagrant[1] abuse of discretion.[2] *Commonwealth v. Stokes*, 279 Pa.Super.Ct. 361, 421 A.2d 240 (1980).

I conclude therefore that the references to feces was induced by the defense questioning who must bear the responsibility for its introduction into evidence; that it had at most a minimal impact on the jury; and that the trial judge's action in refusing a mistrial was well within the limits of his sound discretion, and certainly well removed from flagrant.[3]

I would affirm the judgments of sentence.

1. Flagrant is defined as "glaring, notorious, scandalous." 36 A.C.J.S. p. 745; "conduct which is shocking or outrageous." *Caldwell v. England*, 200 A.2d 376 (1964) (D.C.App.).

2. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion … the judgment exercised is manifestly unreasonable—discretion is abused." *Pokrzywnicki v. Kozak, Jr., et al.*, 353 Pa. 5, 44 A.2d 247 (1945).

3. In view of my conclusion I do not discuss the admissibility of the controverted evidence under any other theories.