396 A.2d 1327

COMMONWEALTH of Pennsylvania

v.

Roberto BASTONE, Appellant.

Superior Court of Pennsylvania.

Submitted March 29, 1978.

Decided Jan. 19, 1979.

---

Neil Leibman, Philadelphia, for appellant.

Robert W. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

This appeal arises from judgment of sentence imposed upon appellant's conviction for robbery. Appellant makes three arguments for discharge, or in the alternative, a new trial.

–1–

Appellant first argues that the lower court erred in admitting evidence of his prior criminal conduct.

Appellant was charged with the robbery of the Fern Bar in Philadelphia on April 21, 1975, about 9:30 p. m. At trial, the bartender, Clinton Harrison, described the robbery as follows. Appellant entered the bar and ordered two Rolling Rock beers. After ordering the second beer, appellant pulled a gun on Harrison and demanded the money in the cash register. Harrison at first brought appellant only the paper money, but when appellant ordered him to go back and "bring it all," Harrison gave him the change as well. Appellant had warned Harrison that if he did not give him everything, appellant would kill him. After getting the money, appellant left the bar. The Commonwealth introduced a gun, which Harrison identified as the gun appellant used during the robbery.

After Harrison completed his testimony, the Commonwealth called Joseph Kryston, the bartender of the R&F Tavern, located approximately four blocks from the Fern Bar. Kryston testified as follows. On August 24, 1975, three days after the robbery of the Fern Bar, appellant entered his bar at 7:00 p. m. and ordered a Rolling Rock beer. Appellant left the bar after drinking the beer, but two and a half hours later he returned and ordered another Rolling Rock. While appellant was drinking the beer, he pulled a gun on Kryston and threatened to kill him if he did not give him money. When Kryston brought appellant the paper money from one of the bar's two cash registers, appellant demanded the change in that register, as well as the money in the other register. After Kryston gave him this money, appellant left. Within three to five minutes after leaving the bar, appellant was apprehended by the police and was identified by Kryston at the scene of the crime. Kryston identified the gun identified by Harrison as the gun appellant had used on him.

The Commonwealth justifies the introduction of Kryston's testimony on the ground that the robberies of the two bars showed a common scheme, and that proof of appellant's commission of the second robbery therefore tended to prove his commission of the first.

The law is clear that as a general rule the Commonwealth may not introduce evidence of distinct crimes against a defendant in a prosecution for a separate offense. *Commonwealth v. Fuller*, 479 Pa. 353, 388 A.2d 693 (1978); *Commonwealth v. Terry*, 462 Pa. 595, 342 A.2d 92 (1975); *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973); *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973) (plurality opinion); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). This limitation on the Commonwealth's proof springs from the recognition that proof "that a person has committed one offense is not proof that he has committed another," and also that "the effect of such testimony upon a jury is . . . bound to create prejudice and an emotional reaction on their part against the defendant."

*Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). *Accord, Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Groce, supra; Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). Nevertheless, well-recognized exceptions to the general rule allow the admission of evidence of other crimes committed by a defendant when that evidence tends to prove:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Peterson*, 453 Pa. at 197–98, 307 A.2d at 269.

*See also Commonwealth v. Wable, supra.*

■ The Supreme Court has noted that in order to introduce evidence of other crimes under the fourth exception listed above, the Commonwealth must show more than that the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others. *See Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *McCormick, Evidence* § 190 at 449 (Cleary ed. 1972) ("[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used [in the commission of the crimes] must be so unusual and distinctive as to be like a signature.").

In several cases the Supreme Court has found the correlation of details among the crimes too low to warrant the introduction of evidence of other crimes committed by the defendant. In *Commonwealth v. Fortune, supra*, the Court

held that even though the defendant had been implicated by a co-defendant in six other robberies within a two month period and a one block radius, evidence of those robberies was inadmissible because 1) the victims of those other robberies had not been identified, and the exact dates and times of the robberies had not been specified; 2) only four of the six robberies shared a common modus operandi; 3) all the victims of the crimes did not share common characteristics; 4) no common identity of the weapons used in the robberies had been established; 5) there was nothing distinctive in the robberies which separated them from other street crimes and linked them into a chain; and 6) the lack of details in the testimony concerning the other robberies hindered the defendant in establishing an alibi defense. In *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971), the Court held that in a trial for a robbery in a Philadelphia tavern, during which a Texaco credit card was stolen, evidence of an armed robbery at a Texaco gas station six days later, after which the credit card was recovered, was inadmissible. In *Commonwealth v. Peterson*, 453 Pa. at 198 n. 7, 307 A.2d at 270, a majority of the Court noted the "fungible" nature of armed robberies and held that the mere fact that the defendant was identified by witnesses as the perpetrator of both robberies did not make testimony pertaining to the second robbery admissible at a trial for the first robbery, nor did the fact that witnesses identified the same car as the getaway car used in both incidents, nor the fact that the gun used at the first robbery was found in the getaway car.

■ Still, the requirements that must be satisfied before evidence may be admitted under the "common scheme, plan or design" exception have not been carried so far that the Commonwealth must show that the crimes were progressive stages in a single plot: All that is required is that some "logical connection" among the crimes must appear. *Commonwealth v. Williams*, 227 Pa.Super. 103, 110, 323 A.2d 135, 138 (1974). Thus, in *Commonwealth v. Gilmore*, 447 Pa. 21, 288 A.2d 757 (1972), the Supreme Court affirmed a conviction of felony murder where evidence had been admitted

concerning three prior robberies committed within sixteen days of the murder, on the same stairwell, always by two men, and all with a razor. In *Commonwealth v. Smith*, 443 Pa. 151, 277 A.2d 807 (1971), a conviction for murder committed during the robbery of a motel/gas station complex was affirmed where evidence was admitted that the defendant and an accomplice had robbed two other gas stations on the nights before and after the murder. In *Commonwealth v. Raymond*, 412 Pa. 194, 194 A.2d 150 (1963), *cert. denied*, 377 U.S. 999, 84 S.Ct. 1930, 12 L.Ed.2d 1049 (1964), the Court held that testimony was admissible that the defendant, one week prior to the murder for which he was being tried, had lured another person to the same address where the killing occurred, under the same pretexts, and there assaulted and robbed the other person. *See also Commonwealth v. Schmidt*, 452 Pa. 185, 299 A.2d 254 (1973).

We believe that the present case is within this second line of cases, in that the correlation of details between the two robberies was high. Both robberies occurred within days and blocks of each other. Both occurred at approximately 9:00 p. m. The perpetrator of both ordered a Rolling Rock beer prior to committing the robberies, and insisted that the bartender go back and bring the change from the cash registers; and also, the same gun was used in both robberies. In *Commonwealth v. Middleton*, 260 Pa.Super. 571, 394 A.2d 1293 (1978), we held that in a robbery prosecution evidence of a second robbery committed by the defendant was properly admitted under the following circumstances: 1) Both robberies occurred in the same bar; 2) both were committed by the defendant and an accomplice; 3) during both robberies the defendant ordered all the patrons into the rest rooms; and 4) in both robberies the defendant stated, "This is a hold-up." The correlation of details in the present case is at least as great as the correlation in *Middleton*.

–2–

Appellant next argues that the gun used in the robbery of the Fern Bar was improperly admitted at trial. He claims

that the gun was obtained by the Commonwealth as a result of an illegal search and seizure. He also claims that although he filed a timely pre-trial motion pursuant to Pa.R. Crim.P. 312 to suppress the gun, the trial court failed to consider his motion on the merits.

On November 6, 1975, appellant filed a boilerplate motion to suppress statements made by him, identifications made by witnesses, and physical evidence. A suppression hearing was held on November 19, at which time appellant's attorney stated to the court that appellant's motion was "to suppress identification in this matter and any statements or evidence in conjunction therewith." The Commonwealth stipulated that there were no statements, and the hearing judge proceeded to consider the reliability of the out-of-court and in-court identifications made by the Commonwealth witnesses. The judge failed to consider the suppression of the Commonwealth's physical evidence; however, appellant's counsel failed to bring this oversight to the judge's or the Commonwealth's attention until the day of trial, on June 10, 1976. At that time, the trial judge was informed that although the suppression hearing judge had indeed failed to rule on appellant's motion to suppress the physical evidence, another suppression hearing had been held on April 23, 1976, in connection with appellant's robbery of the R&F Tavern, and at that hearing the same issue had been determined adversely to appellant. The trial judge then refused to hear appellant's motion, and at trial admitted the gun into evidence.

In *Commonwealth v. Ryan,* 253 Pa.Super. 92, 384 A.2d 1243 (1978), we held that where the legality of a search and seizure had already been litigated in another case in which the defendant was a party, it did not have to be relitigated in a subsequent case. This holding, of course, is subject to the *caveat* that if the defendant alleges new facts tending to show that the seizure was in fact illegal, then another suppression hearing is required. *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971); *Commonwealth v. Middleton, supra,* (SPAETH, J., concurring); Pa.R.

Crim.P. 323(j);  *cf. Commonwealth v. Oakes*, 481 Pa. 343, 392 A.2d 1324 (1978).  In the present case, however, appellant did not allege any new facts tending to show any error in the decision of the suppression court on the motion heard on April 23, incident to the trial of the robbery of the R&F Tavern.  Moreover, the Commonwealth's failure to prove the legality of the seizure of the gun prior to the trial of the case was attributable to appellant's failure to require such proof, when his motion was heard on November 19.  The trial judge was therefore justified in refusing to hear appellant's motion to suppress the gun.  The question thus becomes whether the April 23 suppression decision, which the trial judge refused to relitigate, was correct.

The record of the April 23 suppression hearing discloses the following.  Appellant was legally arrested within minutes of the R&F Tavern robbery in a playground across the street from the tavern.  When appellant was searched by the arresting officers, bullets were found in his pocket.  When the officers returned to the tavern minutes after their apprehension of appellant, they were approached by an unidentified man who told them that appellant had thrown something into a car parked in front of the park across the street from the tavern.  The officers approached the car pointed out to them, and saw lying on its front seat in plain view an automatic pistol.  The officers seized the gun and discovered that it was the same calibre as the bullets found on appellant.

▮▮ In reviewing a suppression court's findings, this court may "consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted."  *Commonwealth v. Kichline*, 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976).  Applying this standard of review, it is apparent that the lower court's finding that the gun was legally seized was proper.  *See Commonwealth v. Harris*, 479 Pa. 131, 387 A.2d 869 (1978) (seizure of gun lying on open shelf legal where it was in plain view and police were told while they were in the process of arresting defendant that defendant had thrown it there).

–3–

Appellant finally argues that his rights under Pa.R. Crim.P. 1100 were violated.

■ A written complaint against appellant was filed on September 14, 1975. Trial commenced on June 10, 1976, two hundred seventy days after the filing of the complaint. Appellant admits, however, that he waived his Rule 1100 rights for the periods extending from January 6, 1976, to February 19, 1976, and from April 7, 1976, to May 26, 1976. Since these two periods total ninety-three days, the mandatory period for the commencement of trial under Rule 1100(a) was automatically extended to June 13, 1976. Thus, appellant was brought to trial in time.

Affirmed.

CERCONE and PRICE, JJ., concur in the result.

This decision was reached prior to the retirement of JACOBS, former President Judge.

HOFFMAN, J., did not participate in the consideration or decision in this case.