421 A.2d 734

**COMMONWEALTH of Pennsylvania**

v.

**James E. BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1979.

Filed Sept. 23, 1980.

304

Ronald J. Harper, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and EAGEN, JJ.*

PER CURIAM:

On November 17, 1978 after a non–jury trial, James E. Brown, appellant, was found guilty of possession of an instrument of crime–generally,[1] possession of an instrument of crime–concealed weapon,[2] possession of a prohibited offensive weapon,[3] recklessly endangering another person,[4] simple assault,[5] and aggravated assault.[6] Post–verdict motions were denied, and Brown was sentenced to imprisonment for two and one–half to five years on the aggravated assault conviction and to two years probation on the reckless endangerment conviction. Sentence was suspended on the remaining convictions. Brown, represented by new counsel, filed a timely appeal in this Court.

The record reveals the following:

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania is sitting by designation.

1. Crimes Code, 18 Pa.C.S.A. § 907(a) (1973).

2. Id. § 907(b).

3. Id. § 908.

4. Id. § 2705.

5. Id. § 2701.

6. Id. § 2702.

On May 21, 1978, Anita Carter and Georgette Backers were in a bar in Philadelphia. Brown entered the bar and observed Carter and Backers together talking. Carter went to an area for dancing whereupon Brown approached her. Brown said something, undisclosed in the trial transcript, to Carter, removed a straight razor from his pocket, and slashed Carter under her left breast and on her arm.[7] The wound on the arm required nine stitches. Brown then ran from the bar and was arrested the following day after Backers pointed him out to a police officer. The police officer found a straight razor secreted in Brown's sleeve. Brown admitted this straight razor was the same razor he used to slash Carter.

Brown contends, *inter alia*, that the trial court improperly admitted evidence of prior unlawful acts purportedly committed by Brown and that this admission of evidence constituted reversible error. We agree.[8]

Brown's trial was relatively brief. The Commonwealth introduced the testimony of Backers, an eyewitness, and the arresting police officer whose testimony was limited to the circumstances of Brown's arrest on May 22, 1978 and the seizing of the straight razor. The defense called one witness, Brown. Brown claimed that Carter's dance partner pulled a knife on him and that somehow, during an ensuing scuffle, Carter was cut. During cross-examination, Brown reluctantly admitted that he cut Carter but insisted it was unintentional. Essentially then, the case turned on the credibility of Brown and Backers.

7. This description of the event was given at trial by an eyewitness.

8. Because of our disposition of this appeal, we will not consider the following additional claims raised by Brown: (1) Brown was denied the right to confront an adverse witness; (2) the straight razor was erroneously admitted into evidence because the straight razor admitted was not identified as the same razor used to cut Carter; and, (3) trial counsel was ineffective because he failed to make use of pre-trial discovery.

   In addition, viewing the evidence in the light most favorable to the Commonwealth, we are persuaded the evidence was sufficient to convict Brown of the crimes charged and appealed herein. *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979).

During its case–in–chief, the Commonwealth elicited testimony from Backers that, earlier in May 1978, Brown visited Backers ostensibly to discuss the latter's purchase of a stereo system; that Brown then solicited sexual favors from Backers; that, after Backers refused, Brown punched Backers in the mouth; that, on a later date, Brown threatened to kill Backers; and, that Brown threw a bottle through a window at Backers' residence which almost cut Backers.

Generally, absent special circumstances, the Commonwealth cannot introduce evidence of a different crime committed by the defendant because the fact of commission of one crime is not proof of the commission of another, *Commonwealth v. Roman*, 465 Pa. 515, 351 A.2d 214 (1976); *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Bastone*, 262 Pa.Super. 590, 396 A.2d 1327 (1979), and because such evidence is so prejudicial that it strips a defendant of the presumption of innocence. *Commonwealth v. Roman*, supra. Evidence of other crimes is admissible, however, when the evidence tends to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or, (5) the identity of the person charged with the crime on trial. In other words, evidence of a prior criminal act is admissible where there is such a logical connection between the prior criminal act and the crime currently on trial that proof of one naturally tends to show that the accused is the person who committed the other. *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973) (plurality opinion); *Commonwealth v. Bastone*, supra; *Commonwealth v. Irons*, 230 Pa.Super. 56, 326 A.2d 488 (1974). Furthermore, the general rule, which bars introduction of evidence of distinct crimes, applies to non–jury as well as to jury trials. *Johnson Appeal*, 445 Pa. 270, 284 A.2d 780 (1971).

Instantly, the Commonwealth argues the evidence of Brown's purported attacks on Backers was admissible because it was relevant to show Brown's motive and intent in

his assault against Carter. The Commonwealth also argues the disputed evidence was relevant "to negative any claim of mistake or justification." We disagree.

■ Brown never offered, as a defense, that his actions against Carter were the result of a mistake. Brown's only justification was that his actions, which resulted in the slashing of Carter, were unintentional. Accordingly, the evidence was only admissible if relevant to Brown's motive or intent in his assault on Carter. To be admissible to show intent or motive, the evidence of prior criminal acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances. *Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154 (1971). See also *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Roman*, supra.

■ Instantly, the evidence does not support the conclusion that Brown's assault on Carter grew out of or was caused by Brown's purported attacks on Backers. The record indicates Brown did not even know Carter before the date of the assault here involved. Moreover, the record does not show either Carter's involvement in or presence during Brown's purported attacks on Backers. In short, there is no logical connection between the alleged attacks on Backers and Brown's assault against Carter such that proof of the former "will naturally tend to show" that Brown committed the latter. *Commonwealth v. Peterson*, supra; *Commonwealth v. Bastone*, supra; *Commonwealth v. Irons*, supra. See *Commonwealth v. House*, 223 Pa. 487, 72 A. 804 (1909) (Commonwealth cannot introduce evidence of alleged assault on a witness which had no logical connection to charge at trial, namely, that appellant cut another woman on same night in the same neighborhood).

■ As noted above, only one witness to Brown's assault on Carter testified at trial. Moreover, Brown's testimony, if believed, negated any intention to assault on his part. We are not persuaded, therefore, that the error of admitting the

evidence of prior unlawful acts was harmless or did not contribute to the verdict. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Accordingly, the judgment of sentence imposed on the conviction for aggravated assault and the order of probation imposed on the conviction for recklessly endangering another person are reversed, and a new trial is ordered.

WICKERSHAM, J., files a dissenting statement.

WICKERSHAM, Judge, dissenting:

I dissent.

I would affirm the judgment of sentence on the opinion of the learned trial judge, the Honorable Michael E. Wallace.