J-A25042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES BIDWELL | |
| Appellant | No. 50 EDA 2014 |

Appeal from the Judgment of Sentence of August 22, 2013
In the Court of Common Pleas of Monroe County
Criminal Division at No.: CP-45-CR-0002816-2011

BEFORE: DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED MARCH 06, 2015**

James Bidwell ("Bidwell") appeals the August 22, 2013 judgment of sentence. For the reasons set forth herein, we conclude that the trial court abused its discretion in allowing the Commonwealth to introduce evidence of Bidwell's prior bad acts pursuant to Rule 404(b) of the Pennsylvania Rules of Evidence. Accordingly, we vacate Bidwell's judgment of sentence, and we remand for additional proceedings consistent with this memorandum.

The trial court set forth the pertinent factual and procedural history of this case as follows:

> On November 18, 2010, Corporal Lucas Bray of the Pocono Mountain Regional Police Department ("PMRPD") received information from a confidential informant that [Bidwell] and another individual by the name of Chase Argot ("Argot") would

---

[*]     Retired Senior Judge assigned to the Superior Court.

be traveling in a red [tractor-trailer] towing another truck.[1] The informant stated that the two had travelled to Philadelphia in order to pick up quantities of [m]ethamphetamine[,] and that they were now on their way back to the area. Corporal Bray informed Corporal Matt Nero, also of [the] PMRPD, of the information provided by the informant. At the time, Corporal Nero was on patrol in an unmarked, black Dodge Charger, working the 3 p.m. to 11 p.m. shift. While parked on Route 115 near Interstate 80 in Blakeslee, [Pennsylvania,] Corporal Nero observed a vehicle that matched the description provided by Corporal Bray. Corporal Nero spotted a red [tractor-trailer] exiting from Interstate 80 onto Route 115 [northbound] . . . . Corporal Nero saw that the truck had run the stop sign at the end of the exit ramp. In addition to the stop sign violation, Corporal Nero noticed that the tag on the trailer was obstructed; a metal object appeared to be blocking the truck's tag.

Corporal Nero activated his vehicle's siren and lights[,] and initiated a traffic stop on Route 115 near the Best Western Hotel. Corporal Nero approached the vehicle from the passenger side; Argot was driving the vehicle and [Bidwell] was sitting in the passenger seat drinking water and using his [iPad.] Corporal Nero asked Argot and [Bidwell] for identification, insurance, and registration. When Corporal Nero returned to his patrol vehicle, he ran a criminal history check on Argot and [Bidwell, which indicated] that Argot and [Bidwell] each had a criminal history. Specifically, [Bidwell's] criminal background check revealed prior drug charges.

Corporal Nero next asked Argot to step out of the vehicle. Argot stated that there were no illegal substances on his person, nor were there any illegal substances located in the truck. Argot

_____

1        Corporal Bray's confidential informant "ha[d] been deemed credible and reliable in the past through information provided[,] which lead [*sic*] to several arrests, the issuance of warrants[,] and the seizure of . . . controlled substances." Affidavit of Probable Cause, 11/19/2010, at 4. In addition to the confidential informant, police also received information from three additional sources, each of whom stated that Bidwell and Argot were involved in the illegal distribution of methamphetamine. These individuals are referred to in the affidavit of probable cause as "concerned citizen," "concerned resident," and "confidential source," respectively. *Id.* at 3-4.

consented to a personal search, as well as a search of the truck.
[Bidwell then informed Corporal Nero that the truck belonged to
him, and refused to consent to any searches.]  After [Bidwell]
denied Corporal Nero's request to search the truck, [Corporal
Nero] deployed [his canine,] Niko[,] to perform a search of the
vehicle's perimeter based on his suspicion that illegal narcotics
were present [in the truck.]

Niko . . . alert[ed] to the presence of a controlled substance.
Upon Niko's alert, a decision was made to have the vehicle
impounded[,] and the truck was towed to the police
headquarters approximately twelve miles away.  While located at
police headquarters, the truck was under constant visual
inspection.  On November 19, 2010, at 8:45 a.m., Magisterial
District Judge Anthony Fluegel signed a warrant authorizing a
search of [Bidwell's] truck.

Trial Court Opinion ("T.C.O."), 6/1/2012, at 1-3 (unnumbered).

Upon searching Bidwell's tractor-trailer, police discovered a small
amount of methamphetamine (approximately .11 grams) inside of a
briefcase that belonged to Argot.  They also found 3.3 grams of
methamphetamine (commonly referred to as an "eight ball") underneath a
mattress, which was directly behind the area where Bidwell was sitting at
the time of the traffic stop.

On June 9, 2011, Corporal Bray filed a criminal complaint charging
Bidwell with possession of a controlled substance, possession of a controlled
substance with intent to deliver ("PWID"), possession of drug paraphernalia,
and conspiracy to commit PWID.[2]  On February 29, 2012, Bidwell filed an

_____

[2]    35 P.S. §§ 780-113(a)(16), 780-113(a)(30), and 780-113(a)(32); and
18 Pa.C.S. § 903 (35 P.S. § 780-113(a)(30)), respectively.

- 3 -

omnibus pretrial motion to suppress the physical evidence obtained from the search of his truck. Therein, Bidwell argued that: (1) the stop, detention, and seizure of Bidwell's tractor-trailer were unconstitutional; (2) Corporal Nero conducted a canine search of the exterior of Bidwell's tractor-trailer without the requisite reasonable suspicion that the vehicle was carrying controlled substances; and (3) the November 19, 2010 search warrant was not supported by adequate probable cause. Bidwell's Omnibus Pretrial Motion, 2/29/2012, at 2-6. In his motion, Bidwell also sought disclosure of the identity of the Commonwealth's confidential informant. On June 1, 2012, the trial court denied Bidwell's motion by opinion and order following a hearing.

On December 20, 2012, Bidwell filed a motion *in limine* seeking to preclude Corporal Nero from testifying that Bidwell refused to consent to a search of his tractor-trailer. On January 28, 2013, the Commonwealth filed written notice of its intent to introduce at trial evidence of prior bad acts pursuant to Pa.R.E. 404(b).[3] Specifically, the Commonwealth intended "to call multiple witnesses to establish that [Bidwell] regularly delivered methamphetamine to others." Commonwealth's Notice Pursuant to Pa.R.E. 404(b)(4), 1/28/2013, at 1 (unnumbered). According to the

_____

[3] **See** Pa.R.E. 404(b)(3) ("In a criminal case the prosecutor must provide reasonable notice in advance of trial . . . of the general nature of any [Rule 404(b)] evidence the prosecutor intends to introduce at trial.")

Commonwealth, the evidence of Bidwell's prior drug deliveries would "establish [Bidwell's] intent in the present case." *Id.* In response, Bidwell filed a second motion *in limine* arguing that the Commonwealth should be precluded from introducing the proffered Rule 404(b) evidence.

On March 4, 2013, the Commonwealth filed an amended notice of its intent to introduce evidence of Bidwell's prior bad acts. In the amended notice, the Commonwealth specifically named Chase Argot, Clark Kitchell, and Andrew Dehaan as the witnesses who would testify that Bidwell previously had distributed methamphetamine to his friends and to his employees.[4] Commonwealth's Amended Notice Pursuant to Pa.R.E. 404(b)(4), 3/4/2013, at 1 (unnumbered). According to the Commonwealth, this testimony would establish Bidwell's "intent, *modus operandi*, common scheme, guilty knowledge, and the *res gestae* of the case as a whole." *Id.* at 2.

On May 7, 2013, Bidwell proceeded to a jury trial. Immediately before the trial commenced, the court granted Bidwell's December 20, 2012 motion *in limine*, thereby barring Corporal Nero from testifying that Bidwell had refused to consent to a search of his tractor-trailer. The trial court denied Bidwell's January 28, 2013 motion *in limine*, thereby permitting the

---

[4] Bidwell is the owner of Christian Containers, a garbage hauling company. Notes of Testimony ("N.T."), 5/7/2013, at 28.

Commonwealth to introduce evidence of Bidwell's prior drug deliveries pursuant to Pa.R.E. 404(b).

Despite the trial court's evidentiary ruling, on the first day of Bidwell's trial, Corporal Nero testified that Bidwell "would not give [him] consent to search the vehicle."[5] Notes of Testimony ("N.T."), 5/7/2013, at 43-44. Following Corporal Nero's utterance, Bidwell immediately moved for a mistrial, which the trial court denied. The trial court offered to give the jury a cautionary instruction, but Bidwell declined the offer.

The Commonwealth then presented testimony from Kitchell, Dehaan, and Argot, which demonstrated that, on prior occasions, Bidwell had shared methamphetamine with his friends and his employees. Near the close of the Commonwealth's case, the trial court permitted Corporal Bray to testify over Bidwell's objection that, in his expert opinion, the methamphetamine found in Bidwell's vehicle was consistent with possession with intent to deliver.

On May 9, 2013, the jury found Bidwell guilty of all counts. On August 22, 2013, the trial court sentenced Bidwell to an aggregate term of twenty-four to sixty months' incarceration. Sentencing Order, 8/28/2013, at 1-3. Bidwell then timely filed post-sentence motions, which the trial court denied on December 17, 2013.

---

[5] Corporal Nero testified in response to a question posed by Bidwell's own counsel on cross-examination.

On December 31, 2013, Bidwell timely filed a notice of appeal. On January 8, 2014, the trial court directed Bidwell to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Bidwell timely complied. On February 12, 2014, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Bidwell presents five issues for our consideration:

1. Whether the trial court erred when it allowed the Commonwealth to introduce [Bidwell's] prior drug use and deliveries as [Rule] 404(b) evidence during trial over defense objections?

2. Whether the [trial] court erred when it denied [Bidwell's m]otion for [m]istrial after [Corporal] Nero testified nonresponsively to a defense question stating [Bidwell] refused consent to a search of the vehicle?

3. Whether the [trial] court erred when it refused to order the disclosure of confidential informants and to suppress the methamphetamine seized from the [tractor-trailer] by warrant which relied upon an unlawful canine sniff and no facts upon which the alleged informants could be found reliable?

4. Whether the trial court erred when it refused to order disclosure of the identity of the witness who alleged that Argot was his drug dealer?

5. Whether the trial court erred in allowing [Corporal] Bray to testify over objection that the eight ball of methamphetamine found in the [tractor-trailer] was possessed with intent to deliver?

Brief for Bidwell at 6.[6]

In his first issue, Bidwell argues that the trial court erred in denying his motion *in limine* "to preclude any evidence of prior drug deliveries." ***Id.*** at 12. Specifically, Bidwell sought to preclude the Commonwealth from introducing evidence that he had, on prior occasions unrelated to his arrest for the instant offenses, provided methamphetamine to his employees. Because the certified record demonstrates that this testimony had no relevance other than to demonstrate Bidwell's propensity to distribute methamphetamine, the trial court not only erred, but also abused its discretion in denying Bidwell's motion *in limine*.

"In evaluating the denial or grant of a motion *in limine*, our standard of review is the same as that utilized to analyze an evidentiary challenge." ***Commonwealth v. Pugh***, 101 A.3d 820, 822 (Pa. Super. 2014) (*en banc*).

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Id.*** (quoting ***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010)).

---

[6] In his Rule 1925(b) statement, Bidwell also claimed that the jury's verdict was against the weight of the evidence. Bidwell has abandoned that issue on appeal.

In ***Commonwealth v. Sherwood***, 982 A.2d 483 (Pa. 2009), our

Supreme Court summarized Rule 404(b)[7] of the Pennsylvania Rules of

Evidence as follows:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Sherwood***, 982 A.2d at 497.

Stated simply, Rule 404(b) operates to prevent the jury from drawing

an inference of a defendant's guilt based upon his or her propensity to

commit criminal acts. In this regard, our Supreme Court has explained that:

---

[7]     Pa.R.E. 404(b), entitled "Other crimes, wrongs, or acts," provides in relevant part as follows:

> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

The purpose of [Rule 404(b)] is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

*Commonwealth v. Spruill*, 391 A.2d 1048, 1049-50 (Pa. 1978) (citations omitted).

There are, of course, narrow exceptions to this rule, which may apply when the prior criminal acts are so closely related to the crime charged that they demonstrate a defendant's motive, intent, malice, identity, or a common scheme, plan or design. *Commonwealth v. Stanley*, 398 A.2d 631, 633-34 (Pa. 1979). These exceptions, however, "cannot be stretched in ways that effectively eradicate the rule." *Commonwealth v. Ross*, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*).

As a starting point, we review the relevant testimony elicited at Bidwell's trial. First, Clark Kitchell, one of Bidwell's employees, testified as follows:

**Q:** Did [Bidwell] tell you anything else when he said to stick around [at his shop on November 18, 2010]?

**A:** Yeah. I know they were going to Philadelphia to pick something up, methamphetamines, at the time.

**Q:** He told you that?

**A:** Yes.

**Q:** He delivered it to you in the past?

- 10 -

**A:** He gave it to me in the past. He didn't deliver to me [in] the past.

**Q:** Well, he handed it to you?

**A:** Yes.

**Q:** But he would not make you pay for it?

**A:** No. He never made me pay for it. Mostly it was he gave all the workers mostly methamphetamine to keep them working at the shop.

**Q:** And when he gave it to you how would it be packaged?

**A:** It would be packaged—he would pack it up in a little like dime[-]sized bags. Like in the ziplocked, [*sic*] little bags.

N.T., 5/7/2013, at 64-65.

The Commonwealth also offered testimony from another one of Bidwell's employees, Andrew Dehaan.

**Q:** Okay. Now, before [November 19, 2010,] had you received methamphetamine from [Bidwell]?

**A:** I received it how?

**Q:** Did he give it to you?

**A:** He let me do some. He didn't just give it to me. There is a difference.

**Q:** Tell us how that happened?

**A:** Just like anyone else I partied with. You know, I did drugs with him. I cut out a couple of lines and we did some drugs.

**Q:** So he would cut out a couple of lines or you would?

**A:** He would.

**Q:** He would cut out a couple of lines. And you would do a line and he would do a line. Is that how it worked?

**A:** Yeah.

*Id.* at 100-01.

Finally, Chase Argot testified as follows:

**Q:** How often would [Bidwell] give you methamphetamine?

**A:** I guess you can say regular [*sic*]. I don't really know.

**Q:** Maybe a couple times a week or a couple times a month?

**A:** A couple times a week.

**Q:** Did you know where he was getting his methamphetamine from?

**A:** I do not.

*Id.* at 139-40.

The trial court held that the above testimony was admissible to demonstrate Bidwell's motive, intent, common scheme or plan, and *modus operandi*. T.C.O., 6/1/2012, at 14. We disagree.

In order for Rule 404(b) evidence to be admissible to demonstrate motive or intent there must be a firm basis for concluding that the crime currently on trial "grew out of or was in any way caused by the prior set of facts and circumstances." *Commonwealth v. Camperson*, 612 A.2d 482, 484 (Pa. Super. 1992) (quoting *Commonwealth v. Brown*, 421 A.2d 734, 736 (Pa. Super. 1980)). This analysis is guided by factors such as the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake, or lack of required intent. *Commonwealth v. Sparks*, 492 A.2d

720, 722 (Pa. Super. 1985); **Commonwealth v. Barba**, 460 A.2d 1103, 1109 (Pa. Super. 1983).

It would be illogical to conclude that Bidwell's possession of methamphetamine grew out of or was caused by the fact that Bidwell had previously given methamphetamine to the three witnesses. The two occurrences do not share the close factual nexus that is required by Rule 404(b). **Camperson**, 612 A.2d at 484. For example, Bidwell's possession of methamphetamine logically could not have been caused by the fact that, on some earlier occasion, Bidwell "cut out a couple of lines" of methamphetamine, and shared them with Dehaan. N.T., 5/7/2013, at 100-01. Nor did the facts surrounding the instant offense grow out of that behavior.

The trial court also held that the Commonwealth's Rule 404(b) evidence was admissible to prove a common scheme or plan and Bidwell's *modus operandi*. T.C.O., 6/1/2012, at 14. Under Pennsylvania law, evidence of prior bad acts is admissible to prove "a common scheme, plan or design where the crimes are so related that proof of one tends to prove the others." **Commonwealth v. Elliott**, 700 A.2d 1243, 1249 (Pa. 1997), *abrogated on other grounds by* **Commonwealth v. Freeman**, 827 A.2d 385 (Pa. 2003). The existence of a common scheme is relevant to establish any element of a crime, "so long as it does not merely indicate the defendant's propensity to commit similar crimes." **Commonwealth v. Bronshtein**, 691 A.2d 907, 915-16 (Pa. 1997).

In **Elliott**, for example, the appellant was accused of sexually assaulting and then killing a young woman whom he approached outside of a particular club at 4:30 a.m. Our Supreme Court affirmed the trial court's decision to permit three other young women to testify that the appellant had similarly preyed upon each of them as they were leaving the exact same club in the early morning hours, and that he had physically and sexually assaulted them. **Elliott**, 700 A.2d at 1250-51. Our Supreme Court reasoned that the testimony was admissible to establish a common scheme, plan or design in light of the "close similarity between [the] assaults." **Id.**

Relatedly, in order to establish a defendant's *modus operandi*, the Commonwealth must demonstrate that the crimes in question are "so nearly identical in method as to earmark them as the handiwork of the accused." **Commonwealth v. Rush**, 646 A.2d 557, 561 (Pa. 1994) (quoting McCormick on Evidence, § 190 (2d ed. 1972)). "More is demanded [than] the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual or distinctive as to be like a signature." **Commonwealth v. Blady**, 444 A.2d 670, 671-72 (Pa. Super. 1982)

Here, any similarity between Bidwell's prior methamphetamine deliveries (as testified to by Kitchell, Dehaan, and Argot) and this case falls short of proof of a common scheme, plan or design. The Commonwealth presented evidence of similarity only at the most basic level—to wit, that both incidents involved methamphetamine. **Cf. Elliott**, 700 A.2d at 1249

(holding that evidence of prior bad acts is admissible to prove "a common scheme, plan or design where the crimes are so related that proof of one tends to prove the others."). Bidwell's drug deliveries did not share a distinctive *modus operandi*. There was, for example, no testimony that the methamphetamine seized (or its packaging) was uniquely consistent with Bidwell's prior deliveries. The prior bad acts testimony demonstrated merely that Bidwell previously had shared methamphetamine with his friends and employees; it did not illustrate "a unique 'signature' *modus operandi*." *Ross*, 57 A.3d at 104.

Of course, the Commonwealth did not argue that Bidwell's prior drug deliveries actually caused him to possess methamphetamine subsequently, or that the instant offenses developed from Bidwell's sharing of methamphetamine with his employees. Instead, the Commonwealth relied upon the exact reasoning that Rule 404(b) forbids—the inference that, because Bidwell distributed methamphetamine on a prior occasion, he must have intended to distribute **this** methamphetamine. Indeed, the assistant district attorney candidly acknowledged this fact.

> I want to be clear that the reason that we want to bring in this [evidence] is because I can't think of any other way to get the testimony from the witnesses that they knew that they were going to get methamphetamine from [Bidwell] other than based upon their prior deliveries. . . . If the court limits that and cuts that off, the evidence will make no sense to the jury. They will have no reason to believe that these witnesses had any knowledge of what [Bidwell] was going to do[,] and it all goes down to [Bidwell's] possession and his intent to deliver.

N.T., 5/7/2013, at 11. The assistant district attorney plainly encouraged the jury to draw this inference in his closing argument: "And the reason why we know that [Bidwell] had it to deliver is because that was what he did with his methamphetamine. He cut it up into lines, [and] shared [it] with his friends or so-called friends." *Id.* at 38. The purpose of Rule 404(b) is to prevent the jury from drawing such a propensity inference.

This does not end our inquiry. Before we may grant Bidwell relief, we must find that the trial court's error was not harmless. It is well-settled that the Commonwealth bears the burden of establishing that the error was harmless beyond a reasonable doubt. *Commonwealth v. Story*, 383 A.2d 155, 162 n.11 (Pa. 1978).

> Harmless error exists where (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002) (quoting *Commonwealth v. Robinson*, 721 A.2d 344, 350 (Pa. 1999)).

Our Supreme Court has noted that "[e]vidence of prior criminal activity . . . is probably only equaled by a confession in its prejudicial impact upon a jury." *Spruill*, 391 A.2d at 1050. "The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence."

- 16 -

*Commonwealth v. Trowery*, 235 A.2d 171, 172 (Pa. Super. 1967). For this reason, Rule 404(b)(1) explicitly prohibits introduction of evidence of prior bad acts for the purpose of showing that the defendant has a generalized propensity to commit a particular crime—here, the proclivity to distribute methamphetamine.

Instantly, the Commonwealth's Rule 404(b) evidence was nothing more than an invitation to the jury to infer that Bidwell intended to distribute methamphetamine because he had done so in the past. The prospect that the jury would draw such an inference was underscored by the assistant district attorney's closing argument, which unmistakably called upon the jury to infer Bidwell's guilt based upon his prior bad acts. *See* N.T., 5/9/2013, at 38 ("[T]he reason why we know that [Bidwell] had [methamphetamine] to deliver is because that was what he did with his methamphetamine. He cut it up into lines, [and] shared [it] with his friends."). Moreover, the evidence of Bidwell's prior methamphetamine deliveries was not cumulative; it was the cornerstone of the Commonwealth's case against Bidwell.[8] The

---

[8] Although Corporal Bray, an expert in the field of drug trafficking, testified that the facts surrounding Bidwell's possession of methamphetamine were consistent with possession with intent to deliver, Corporal Bray also testified that he based his opinion, at least in part, upon the Commonwealth's Rule 404(b) evidence. N.T., 5/7/2013, at 165-67. Therefore, the evidence of Bidwell's prior bad acts tainted Corporal Bray's expert testimony. *See Hutchinson*, 811 A.2d at 561 ("Harmless error exists where . . . the erroneously admitted evidence was merely cumulative of other **untainted** evidence which was substantially similar to the erroneously admitted evidence." (emphasis added)).

Commonwealth needed the jury to draw that connection in order to prove that Bidwell intended to distribute the narcotics at issue. The assistant district attorney plainly conceded this fact to the trial court. N.T., 5/7/2013, at 11.

Based upon the particularly prejudicial nature of prior bad acts testimony and the lack of any other compelling evidence of Bidwell's intent to deliver methamphetamine, the trial court's admission of Rule 404(b) evidence was not harmless beyond a reasonable doubt. Accordingly, the trial court not only erred, but also abused its discretion by permitting such evidence. Consequently, Bidwell is entitled to a new trial.

Having determined that Bidwell is entitled to a new trial, we now address his remaining issues inasmuch as they may arise upon remand. In his second issue, Bidwell contends that the trial court erred in denying his motion for a mistrial. Brief for Bidwell at 27-29.

The trial court granted Bidwell's motion *in limine*, which precluded at trial any evidence regarding Bidwell's refusal to consent to the search of his truck. Nevertheless, during defense counsel's cross-examination, Corporal Nero testified that Bidwell "would not give [him] consent to search the vehicle." N.T., 5/7/2013, at 43-44. The remedy for such a violation would be a new trial, the same remedy we granted to Bidwell on his first issue. Our resolution of Bidwell's first issue, therefore, has rendered this claim moot. **See In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002) ("As a general rule, an actual case or controversy must exist at all stages of the judicial

process, or a case will be dismissed as moot."). Nothing about our resolution of this issue should be taken as an expansion or constriction of the trial court's evidentiary ruling, which remains viable and applies with equal force upon remand. Accordingly, these unique circumstances are unlikely to recur at Bidwell's retrial.

In his third issue, Bidwell argues that the trial court erred in denying his pretrial motion to suppress the physical evidence obtained from the search of his truck. Specifically, Bidwell contends that: (1) because Corporal Nero lacked reasonable suspicion that Bidwell and Argot were involved in drug trafficking, the canine search of Bidwell's truck violated Article I, § 8 of the Pennsylvania Constitution; (2) the search warrant failed to articulate the confidential informant's reliability and basis of knowledge; and (3) the trial court erred in failing to order disclosure of the identity of the Commonwealth's confidential informant. Brief for Bidwell at 15-22. We disagree.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1200 (Pa. Super. 2002) (internal citations and quotation marks omitted).

- 19 -

In Bidwell's first sub-issue, he claims that there was "no reasonable suspicion to use [the] drug dog." Brief for Bidwell at 15. We disagree.

Pursuant to Article I, § 8 of the Pennsylvania Constitution, a canine sniff constitutes a search.[9] ***Commonwealth v. Johnston***, 530 A.2d 74, 79 (Pa. 1987). However, this type of search "is inherently less intrusive upon an individual's privacy than other searches such as wiretapping or rummaging through one's luggage." ***Id.*** Because canine searches "amount[] to a relatively minor intrusion upon privacy," they need not be supported by probable cause. Instead, the police must possess only reasonable suspicion that narcotics will be found in the area subject to the canine search. ***Id.***

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot.

***Commonwealth v. Brown***, 996 A.2d 473, 477 (Pa. 2010) (citing ***Terry v. Ohio***, 392 U.S. 1, 88 (1968)).

---

[9] ***Cf. United States v. Place***, 462 U.S. 696 (1983) (holding that a sniff by a trained narcotics detection dog is not a search within the meaning of the Fourth Amendment to the United States Constitution).

Here, Bidwell does not dispute that Corporal Nero stopped Bidwell's tractor-trailer after observing two violations of the Motor Vehicle Code.[10] Bidwell argues that, once Corporal Nero issued a warning to Argot for those offenses, he no longer had reasonable suspicion that criminal activity was afoot. Bidwell therefore concludes that the canine search (which Corporal Nero conducted after the traffic stop had concluded) was unsupported by the required reasonable suspicion.

Our review of the suppression record demonstrates that Corporal Bray informed Corporal Nero that a known confidential informant had reported that Bidwell and Argot would be returning from Philadelphia on the night in question. N.T., 4/2/2012, at 13, exh. 1. The confidential informant further stated that the pair would be transporting methamphetamine in a red tractor-trailer. *Id.* The confidential informant had provided accurate and reliable information in the past. *Id.* Moreover, the confidential informant's tip was buttressed by the uncorroborated reports from three anonymous sources, which the police referred to as "concerned citizen," "concerned resident," and "confidential source" in the affidavit of probable cause. *Id.* Each of these sources identified Bidwell and Argot as methamphetamine dealers, and at least one of the anonymous sources echoed the confidential

_____

[10]    *See* 75 Pa.C.S. § 3323(b) (duties at stop signs); 75 Pa.C.S. § 1332 (display of registration plate).

informant's prediction that Bidwell and Argot would be traveling to Philadelphia to pick up bulk quantities of methamphetamine. *Id.*

Corporal Nero observed a tractor-trailer that matched the confidential informant's description. Corporal Nero then identified the two occupants as Bidwell and Argot, and determined that Bidwell's extensive criminal history included violations relating to the illegal manufacture and distribution of controlled substances. N.T., 4/2/2012, at 48. The trial court concluded that these facts, combined with the tip provided by a known confidential informant who had proven reliable in the past, were sufficient to give rise to reasonable suspicion.

Our Supreme Court has held that an informant's tip may produce probable cause—a requirement more stringent than the reasonable suspicion needed for a canine search—where police independently corroborate the tip, or where the informant has previously provided accurate information of criminal activity. *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999). Here, the police possessed such a tip from a known informant who had proved to be reliable in the past. That information was, to some degree, corroborated by anonymous tips from various "concerned citizens." Finally, Corporal Nero observed Argot and Bidwell traveling in a vehicle consistent with the informant's tip, at the time and in the direction that the informant

predicted. Accordingly, the trial court did not err in holding that Corporal Nero reasonably suspected that narcotics would be found in Bidwell's truck.[11]

Next, Bidwell maintains that the affidavit in support of the search warrant did not "articulate reasons supporting the reliability of the alleged informants."[12] Brief for Bidwell at 20. This argument is without merit.

When reviewing whether a search warrant was sufficiently supported by probable cause, we employ the "totality of the circumstances" analysis of *Illinois v. Gates*, 462 U.S. 213 (1983). *See Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985) (adopting the "totality of circumstances" test in Pennsylvania).

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a

---

[11] In its December 17, 2013 opinion, the trial court noted that Bidwell appeared to be nervous throughout the traffic stop, and that Argot's eyes were bloodshot "as though he were intoxicated." T.C.O., 12/17/2013, at 18 n.9. The Commonwealth did not present this evidence at Bidwell's suppression hearing. Therefore, we reject the trial court's analysis insofar as it relied upon these factors in concluding that the canine search was supported by reasonable suspicion. *See In re L.J.*, 79 A.3d 1073 (Pa. 2013) (holding that an appellate court's scope of review in suppression matters includes only the suppression hearing record, and excludes any evidence elicited at trial).

[12] Because we conclude that the canine sniff was supported by reasonable suspicion, we need not address Bidwell's contention that the search warrant was "tainted by the unlawful sniff." Brief for Bidwell at 20.

crime will be found in a particular place. *Gray*, 503 A.2d at 925 (quoting *Gates*, 462 U.S. at 238-39).

*Commonwealth v. Ceriani*, 600 A.2d 1282, 1283-84 (Pa. Super. 1991).

In reviewing the validity of a search warrant, the "reviewing court is limited to determining whether there is substantial evidence supporting the issuing authority's decision to approve the warrant." *Commonwealth v. Cramutola*, 676 A.2d 1214, 1216 (Pa. Super. 1996). "We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause." *Commonwealth v. Rogers*, 615 A.2d 55, 62 (Pa. Super. 1992).

Instantly, Bidwell takes issue with the three anonymous sources listed in the affidavit of probable cause, whose reliability and basis of knowledge were unknown to the police. Bidwell fails to overcome the fact that these sources were provided in addition to a **known confidential informant** who "ha[d] been deemed credible and reliable in the past through information provided." Affidavit of Probable Cause, 11/19/2010, at 4.

We have held that "[p]robable cause to support issuance of a search warrant is present where facts and circumstances within the affiant's knowledge, of which he has reasonable trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in belief that a search should be conducted." *Commonwealth v. Bruner*, 564 A.2d 1277, 1282 (Pa. Super. 1989); *see also Commonwealth v. Sudler*, 436

A.2d 1376 (Pa. 1981) ("[I]dentified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances."). Therefore, Bidwell's assertion that probable cause is lacking because the officers failed to corroborate the anonymous allegations in the warrant application is misplaced.[13]

In his next sub-issue, Bidwell argues that the trial court erred in refusing to order the Commonwealth to disclose the identity of its confidential informant.[14] We disagree.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington*, 63 A.3d 797, 801

---

[13] We also reject Bidwell's contention that probable cause is lacking because the affidavit "fail[ed] to state that the canine was certified or otherwise reliable in the detection of controlled substances." Brief for Bidwell at 26. It is well-established that an affidavit of probable cause "must be viewed in a common sense, nontechnical, ungrudging and positive manner." *Commonwealth v. Baker*, 615 A.2d 23, 25 (Pa. 1992). Here, the affidavit of probable cause stated that Corporal Nero "deployed K9 Niko to conduct a narcotics sweep of the perimeter of vehicle. K9 Niko made a positive alert to the presence of a controlled substance about the vehicle." Affidavit of Probable Cause, 11/19/2010, at 4. A common sense reading of the affidavit of probable cause belies Bidwell's argument that the magistrate lacked information "that the canine was more than just an ordinary police dog." Brief for Bidwell at 27.

[14] The confidential informant initially reported that Bidwell and Argot would be returning from Philadelphia in a red tractor-trailer containing methamphetamine for distribution. Affidavit of Probable Cause, 11/19/2010, at 5.

(Pa. Super. 2013). The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. *Commonwealth v. Bing*, 713 A.2d 56 (Pa. 1998); *Commonwealth v. Roebuck*, 681 A.2d 1279, 1283 n.6 (Pa. 1996). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant first must establish that the information sought is material to the preparation of the defense, and that the request is reasonable. *Roebuck*, 681 A.2d at 1283. Only after a defendant makes such a showing is the trial court required to determine whether the information should be revealed by balancing "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Commonwealth v. Marsh*, 997 A.2d 318, 321-22 (Pa. 2010); *Bing*, 713 A.2d at 58. Other relevant factors include the particular crime(s) charged, any possible defenses, and the potential significance of the informer's testimony. *Marsh*, 997 A.2d at 322.

Instantly, Bidwell has failed to make a showing sufficient to overcome the Commonwealth's qualified privilege to withhold the identity of its confidential informant. Before the trial court, Bidwell asserted that the confidential informant was fictitious, but failed to offer any support for his claim.[15] Moreover, even if Bidwell had made a compelling showing of

---

[15] Bidwell's argument is weakened by the fact that the Commonwealth disclosed the identity of one of the confidential sources used in the preparation of the search warrant application. Because Kristen Wagner died prior to Bidwell's trial, and her safety was therefore no longer in danger, the
*(Footnote Continued Next Page)*

materiality, his claim would still fail because "the disclosure of the identity of an informant is not required when the safety of the informant would be jeopardized." **Bing**, 551 713 A.2d at 60. Here, the Commonwealth presented evidence that the confidential sources used in the preparation of the search warrant would be in danger of death or serious injury if their identities were revealed. Indeed, the confidential sources explicitly stated that they feared that Bidwell would physically harm or kill them if he learned of their identities. N.T., 4/2/2012, at 16. The trial court also considered Bidwell's violent criminal history, and the fact that the instant charges carried with them the possibility of a substantial period of incarceration. Based upon this evidence, the trial court concluded that disclosing the identity of the confidential sources would jeopardize their safety, and denied Bidwell's motion. We discern no abuse of discretion in that ruling.

In Bidwell's fourth issue, he argues that the Commonwealth's failure to disclose the identity of the confidential source who told police that Argot regularly sold him methamphetamine[16] constituted a violation of **Brady v.**

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Commonwealth disclosed her identity. N.T., 4/2/2012, at 17. The Commonwealth also supplied the defense with a recording of Wagner's statement to the police. **Id.** Despite this disclosure, Bidwell still maintains that the Commonwealth has fabricated the confidential informant. **See e.g.**, Brief for Bidwell at 22 ("If ordered to disclose the existence of the informants, the Commonwealth could not have complied since they did not exist.").

[16] This source was described in the affidavit of probable cause as follows: "On 9/21/2010 after an individual was arrested for the possession of a
_(Footnote Continued Next Page)_

*Maryland*, 373 U.S. 83 (1963). Bidwell's argument on this point consists of a single sentence summarizing the essential holding in *Brady*, followed by an assertion that the Commonwealth violated *Brady* in failing to provide the defense with the source's identity. Bidwell provides no support for his claim that the identity of the source was material to his defense, nor does he explain how the trial court abused its discretion in denying his motion to disclose the source's identity. Accordingly, Bidwell has waived this issue due to his failure to develop the argument in a manner sufficient to warrant our review. *See* Pa.R.A.P. 2119(b); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

In his final issue, Bidwell maintains that the trial court erred in "allowing [Corporal] Bray to testify that an eight ball [of methamphetamine] was consistent with an intent to deliver." Brief for Bidwell at 30. Bidwell argues that "[Corporal] Bray had no support for his opinion other than the testimony [of] Argot, Dehaan[,] and Kitchell . . . that Bidwell had shared methamphetamine [with them] on prior occasions and [Corporal] Bray was

_____
*(Footnote Continued)*

controlled substance, the individual provided information about the person who sells him narcotics. The individual identified Chase Argot as his drug dealer." Affidavit of Probable Cause, 11/19/2010, at 3.

simply being used to bolster their credibility." Brief for Bidwell at 31. This claim is without merit.

> The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

**Pugh**, 101 A.3d at 822 (quoting **Commonwealth v. Minich**, 4 A.3d 1063, 1068 (Pa. Super. 2010)).

Here, Corporal Bray testified as an expert in drug trafficking, and opined that the facts surrounding Bidwell's possession of methamphetamine were consistent with possession with intent to deliver. N.T., 5/7/2013, at 110, 164-65. Corporal Bray testified that the quantity of methamphetamine found in Bidwell's truck typically "would be re-packaged into a bunch of little bags . . . and then sold in smaller quantities." **Id.** at 161. Furthermore, the certified record belies Bidwell's contention that Corporal Bray based his opinion solely upon the testimony of Argot, Dehaan, and Kitchell. Corporal Bray also considered the quantity and packaging of the methamphetamine, and the fact that the methamphetamine was in crystalline, rather than powder, form. The trial court did not abuse its discretion in allowing

Corporal Bray to testify that the amount of methamphetamine discovered in Bidwell's tractor-trailer likely was intended for distribution.[17]

For the foregoing reasons, the trial court erred in admitting evidence of Bidwell's prior drug deliveries under the auspices of Rule 404(b). Because the certified record is devoid of any other compelling evidence of Bidwell's intent to deliver methamphetamine, we cannot conclude beyond a reasonable doubt that the error was harmless. Accordingly, we vacate Bidwell's judgment of sentence and remand for retrial.

Judgment of sentence vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/2015

---

[17] In light of our holding that the trial court erred in admitting the Commonwealth's Rule 404(b) evidence, and because Corporal Bray based his opinion, at least in part, upon that testimony, Corporal Bray's expert opinion necessarily may differ upon remand.